**Connie SNYDER, Plaintiff-Appellant,**

v.

**George KURVERS, Individually and in his official capacity as Executive Secretary of the Board on Judicial Standards of the State of Minnesota, Defendant-Appellee.**

No. 84–5164.

United States Court of Appeals, Eighth Circuit.

Submitted June 14, 1985.

Decided July 12, 1985.

Gregory T. Spalj, St. Paul, Minn., for plaintiff-appellant.

Catherine F. Haukedahl, St. Paul, Minn., for defendant-appellee.

Before LAY, Chief Judge, PHILLIPS,* Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

PHILLIPS, Senior Circuit Judge.

Plaintiff-appellant appeals from the summary judgment dismissing her 42 U.S.C. § 1983 action alleging violations of her constitutional rights to privacy. The litigation grew out of an investigation of the County Judge of a Minnesota County by the State Board on Judicial Standards. We affirm.

I

The Minnesota Board on Judicial Standards originally was created by order of the Supreme Court of Minnesota in 1970. The current Board was created by the State Legislature in 1971 by Minn.Laws 1971, ch. 909, codified as Minn.Stat. § 490.-15. The Board is within the judicial branch of the State Government.

Under Minn.Stat. § 490.16 the Board is vested with broad powers to recommend to the Supreme Court of Minnesota that judges be suspended, retired, censured or removed from office for violation of judicial standards or for judicial misconduct. Subdivision 5 of § 490.16 authorizes the Supreme Court to make rules further implementing its responsibilities and authority. The Board appoints its executive secretary. Rules adopted by the Supreme Court set out specific duties and responsibilities of the executive secretary, including the authority to receive and screen complaints, make preliminary evaluations, conduct investigations and perform the general administrative functions of the Board.

The rules of the Board on Judicial Standards are set forth in the Appendix of this

---

* The HONORABLE HARRY PHILLIPS, Senior Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation.

opinion. Board Rules 6 through 10 establish the procedures used by the Board and its executive secretary in receiving, evaluating, investigating and acting upon complaints. Under these rules, the executive secretary screens complaints he receives and then presents them to the Board. The Board determines whether a detailed investigation is warranted. If so, the judge may be notified that he is the subject of a complaint. When the Board determines that an investigation is warranted, the executive secretary conducts the investigation and reports his findings and recommendations to the Board. The Board may determine at that point whether there is probable cause to believe that at least one of the grounds for discipline set forth in Rule 4 has been met. If so, a detailed statement of allegations is prepared by the executive secretary and served by him upon the judge. The judge then is given the opportunity to respond to the statement in writing, by personal appearance, or both.

After the judge has responded, the Board may terminate the proceeding and dismiss the complaint if it finds that there is insufficient cause to proceed. If the Board determines that cause exists, it files a formal complaint with the executive secretary. A copy of the complaint is served upon the judge and a copy is filed with the Supreme Court of Minnesota. The Board requests the Supreme Court to appoint a referee to conduct a formal hearing. The referee submits to the Board his or her findings and any objections received from counsel for the Board or the judge. The Board then makes a recommendation to the Supreme Court as to discipline.

## II

District Judge Diana E. Murphy, in granting the motion of the defendant for summary judgment, stated in her opinion:

This case began when Richard Erickson, plaintiff's former husband, submitted a complaint to the Board by telephone on March 30, 1982. He alleged that Judge Clement H. Snyder, Jr., a county judge in Fillmore County, Minnesota, was person-

ally involved with Erickson's wife, had failed to remove himself from matters relating to the Erickson's divorce and child support proceedings, and had prepared false letters advertising a class for legal secretaries in St. Paul to explain the plaintiff's absence when she accompanied the judge to a meeting. Erickson also stated that he told several public officials in Fillmore County of the relationship between his wife and Judge Snyder and that this relationship was common knowledge in Fillmore County.

On April 16, the Board ordered defendant, the executive secretary, to investigate the complaint and to inform Judge Snyder of it. In May and June, defendant interviewed approximately nineteen people. Defendant's memorandum states he learned from these interviews that Erickson had taken his complaint to public officials in the county first and that the relationship was the subject of "common gossip" in Fillmore County. Defendant also interviewed plaintiff on two occasions. On May 27, 1982, he showed up at plaintiff's apartment without notice. She further alleges that he asked her personal questions in front of her children concerning an affair with Judge Snyder. She refused to answer these questions. Consequently, she was subpoenaed by the Board and appeared on June 9, 1982. She responded to questions about a trip she took to Minneapolis with the judge, but stated she would rather not answer questions about the nature of her relationship with the judge because they were personal and potentially incriminating. She also stated her relationship with the judge had become known because her husband had "started talking to a lot of people."

On June 18, 1982, the Board requested and got a response from Judge Snyder in which he admitted his relationship with the plaintiff, plaintiff states. On July 16, the Board directed the executive secretary to prepare a detailed complaint which was served on the judge on July 21. On September 17, 1982, Judge Snyder appeared and made an oral response

in which he argued for a private reprimand for the sake of plaintiff's privacy and her children's. The Board, however, determined that a formal complaint should be issued.

Kelton Gage was hired as an attorney by the Board to draft the complaint. The complaint was filed on September 30, 1982, and generally alleged that (1) the judge established and maintained a sexual relationship with the plaintiff and prepared false documents to deceive her husband about the existence of the relationship; (2) the judge brought his office into disrepute by engaging in activity which became the subject of speculation in the community and by admitting he was possibly [the] father of plaintiff's son; (3) the judge violated the Code of Judicial Conduct by signing orders in plaintiff's action for dissolution of her marriage; (4) the judge presented false expense vouchers for lodging on nights he spent with plaintiff at hotels in the Twin Cities area. A retired judge was appointed as referee on October 11, 1982. In January, 1983, the Board and Judge Snyder entered into a stipulation under which the judge agreed to accept public censure from the court and to repay the costs of the disciplinary proceedings. The stipulation was approved by the Supreme Court on July 29, 1983. This delay was occasioned by a stay pending a special prosecutor's investigation. As a result of this investigation, it was determined not to prosecute.

Plaintiff's federal claim asserts that defendant violated her right to privacy in disclosing her name and information about her in connection with the investigation of Judge Snyder and the subsequent complaint. This action is brought under 42 U.S.C. § 1983. Her state tort claims assert tortious intrusion into private matters, disclosure of private facts, and intentional infliction of emotional distress. She also alleges a violation of Minn.Stat. Ch. 13, the Minnesota Government Data Practices Act.

## III

The Supreme Court of Minnesota entered the following order censuring Judge Snyder on July 29, 1983, published as *In Re Snyder*, 336 N.W.2d 533 (Minn.1983).

### "ORDER

"AMDAHL, Chief Justice.

"This proceeding arises from a petition of the Board on Judicial Standards.[1]

"By complaint dated September 30, 1982, the Board instituted formal proceedings against the Honorable Clement H. Snyder, Jr., Judge of County Court, Fillmore County, Minnesota (Respondent). The charges made against Respondent were based on conduct alleged in the complaint as:

A. You have admitted that you repeatedly had sexual intercourse with Mrs. Connie Erickson, wife of Richard Erickson, during the past one and one-half years and continuing for about five months after you had notice of this investigation. This conduct constitutes adultery under Minnesota Statute 609.36, a gross misdemeanor. You conspired with Mrs. Erickson to deceive her husband as to the existence of this relationship. On one occasion you prepared a false notice of a legal secretarial course at William Mitchell Law School, St. Paul, Minnesota, for Mrs. Erickson to show her husband so as to provide an excuse for her absence while she accompanied you to a judges' meeting in Minneapolis.

B. You have admitted that you may be the father of Mrs. Erickson's child born January 16, 1982. You visited Mrs. Erickson at the Harmony, Minnesota Hospital prior to the child's delivery and while she was convalescing. You also attended the child's baptism at Mrs. Erickson's church and assisted in the preparation of food for the guests at the baptism. This conduct became the subject of gossip and speculation in the community, tending to bring your judicial office into disrepute.

C. After the relationship between you and Mrs. Erickson began, you signed Orders to Show Cause in Mrs. Erickson's

action for dissolution of her marriage to her husband, Richard, on May 26, 1981 and February 11, 1982, in violation of Canon 3C of the Code of Judicial Conduct.

D. On October 12, 1981 and December 11, 1981, you presented false expense vouchers to the State of Minnesota wherein you claimed lodging costs for two people on occasions when Mrs. Erickson spent the night with you at motels in the Twin Cities area, in violation of Minnesota Statute 609.465.

"Respondent filed his response with the Board on October 20, 1982, and, pursuant to Rules of Board of Judicial Standards 9(a)(2), this Court, upon request of the Board, appointed a referee to conduct a formal hearing in the matter. No hearing was, in fact, held before the referee for the reason that prior to the date set for such hearing, the Board and Respondent reached an accord with the result that on January 18, 1983, the Board filed with this court a document entitled:

'STIPULATION BETWEEN THE BOARD ON JUDICIAL STANDARDS OF THE STATE OF MINNESOTA AND THE HONORABLE CLEMENT H. SNYDER, JR., AND RECOMMENDATION OF THE BOARD ON JUDICIAL STANDARDS TO THE SUPREME COURT OF THE STATE OF MINNESOTA.'

"The Stipulation recited that for the purposes of resolving this matter, the Respondent admitted:

a. Respondent repeatedly had sexual intercourse with Mrs. Connie Erickson, wife of Richard Erickson, during the past one and one-half years. Respondent continued the relationship for about five months after he had notice of this investigation. Respondent conspired with Mrs. Erickson to deceive her husband as to the existence of this relationship. On one occasion the Respondent prepared a false notice of a legal secretarial course at William Mitchell Law School, St. Paul, Minnesota, for Mrs.

Erickson to show her husband so as to provide an excuse for her absence while she accompanied the Respondent to a judges' meeting in Minneapolis. This conduct became the subject of discussion among certain members of the community.

b. This is willful misconduct which, although not related to judicial duties, brings the judicial office into disrepute within the meaning of Rule 4(a)(3) of the Rules of the Board on Judicial Standards, and Minn.Stat. § 490.16(3).

c. This is conduct prejudicial to the administration of justice or conduct unbecoming a judicial officer that brings the judicial office into disrepute within the meaning of Rule 4(a)(4) of the Rules of the Board on Judicial Standards and Minn.Stat. § 490.16(3).

d. This conduct violates Canon 2 of the Code of Judicial Conduct, and is grounds for discipline under said Canon 2, Rule 4(a)(3) and (4) of the Rules of the Board on Judicial Standards, Minn.Stat. § 490.16(3) and Article 6, Section 9 of the Minnesota Constitution.

"The Stipulation further provided that the Respondent agreed to accept public censure from the Supreme Court and to pay $5,000.00 toward the costs of the proceeding.

"Paragraph 9 of the Stipulation provides:

The Board on Judicial Standards hereby recommends to the Supreme Court that this proceeding be disposed of in accordance with the Stipulation.

"Subsequent to the filing of the Stipulation, this Court was informed that the Board of County Commissioners of Fillmore County had employed a special prosecutor to determine whether criminal charges should be commenced against Respondent. On February 24, 1983, the Court issued an order staying further court action on the Stipulation and Recommendation until a determination had been made

by the Special Prosecutor on whether to institute criminal proceedings.

"The Special Prosecutor, after thorough consideration of the matter, determined that a prosecution should not be had and so notified the Board of County Commissioners of Fillmore County. A copy of that notification was provided to the Court with a covering letter from the Special Prosecutor under date of June 10, 1983.

"The Stipulation does not refer to, or make recommendation regarding, two of the charges made in the complaint:

C. After the relationship between you and Mrs. Erickson began, you signed Orders to Show Cause in Mrs. Erickson's action for dissolution of her marriage to her husband, Richard, on May 26, 1981 and February 11, 1982, in violation of Canon 3C of the Code of Judicial Conduct.

D. On October 12, 1981 and December 11, 1981, you presented false expense vouchers to the State of Minnesota wherein you claimed lodging costs for two people on occasions when Mrs. Erickson spent the night with you at motels in the Twin Cities area, in violation of Minnesota Statute 609.465.

"This court, being of the opinion that a remand to the Board on Judicial Standards for consideration and recommended disposition of charges C and D would result in further delay of final disposition which has already been delayed beyond a reasonable time, has exercised its authority to independently review the record of the proceedings before the Board on the law and on the facts of those two charges and has concluded, as to allegation C, that the orders executed by Respondent were routine orders presented on behalf of the Welfare Department in the collection of support funds which required neither independent conclusions nor exercise of judgment by Respondent and that such action by him was not such as to warrant discipline.

"We further find, as to allegation D, that the record does not support, and indeed refutes and negates, any conclusion that Respondent presented false expense vouchers.

"This court has the authority to reject or modify, in full or in part, the recommendations of the Board. *See* Rules of Board on Judicial Standards 12(f); *In re Gillard*, 271 N.W.2d 785, 813 (Minn.1978). In this case, both the judge and the Board have stipulated to both the factual basis for discipline and to the discipline to be imposed. As indicated, we have carefully examined the record. Nothing there indicates the facts to be different from those stipulated by the parties. The Board is charged by statute to make disciplinary recommendations to this court. After an extensive investigation, the Board has determined an appropriate discipline to be imposed. In this case, therefore, we adopt the disposition recommended by the Board on Judicial Standards and leave to the voters of the Third Judicial District a decision, to be made in the privacy of the voting booth, as to the effect of the stipulated conduct on the office of Judge of County Court of Fillmore County.

"IT IS THEREFORE ORDERED

1. That a copy of the document entitled: 'STIPULATION BETWEEN THE BOARD ON JUDICIAL STANDARDS OF THE STATE OF MINNESOTA AND THE HONORABLE CLEMENT H. SNYDER, JR., AND RECOMMENDATION OF THE BOARD ON JUDICIAL STANDARDS TO THE SUPREME COURT OF THE STATE OF MINNESOTA.' be attached to, and made a part of, this Order.

2. That Judge Clement H. Snyder, Jr. be, and hereby is, censured for the conduct set forth in the attached stipulation.

3. That Judge Clement H. Snyder, Jr. pay to the Board of Judicial Standards of the State of Minnesota on or before September 1, 1983, the sum of $5,000.00 toward the cost of this proceeding and that such sum shall bear interest at the rate of 8 percent per annum from December 1, 1982, to the date or dates of payment.

"APPENDIX

"STATE OF MINNESOTA IN SUPREME COURT

"In re Complaint Concerning the Honorable Clement H. Snyder, Jr.

"Board on Judicial Standards File No. 82–31

"STIPULATION BETWEEN THE BOARD OF JUDICIAL STANDARDS OF THE STATE OF MINNESOTA AND THE HONORABLE CLEMENT H. SNYDER, JR.

"AND

"RECOMMENDATION OF THE BOARD ON JUDICIAL STANDARDS TO THE SUPREME COURT OF THE STATE OF MINNESOTA

"IT IS HEREBY STIPULATED AND AGREED by and between the Board on Judicial Standards (hereinafter designated Petitioner) and Clement H. Snyder, Jr. (hereinafter designated Respondent) as follows:

"1. Petitioner has filed a Complaint concerning the Honorable Clement H. Snyder, Jr., Judge of County Court for Fillmore County in Minnesota, Respondent, with the Supreme Court of the State of Minnesota asking for the appointment of a referee to hear evidence in the matter pursuant to Rule 9(a)(2) of the Rules of the Board on Judicial Standards.

"2. This Court has appointed the Honorable Bruce C. Stone as referee, who has conducted a pretrial conference between the parties. No testimony has been taken, no orders entered, and no proceedings are pending before Judge Stone presently.

"3. The Respondent has filed an Answer to the Complaint, and on June 18, 1982 and September 17, 1982, responded in person before the Board on Judicial Standards. Transcripts of the Respondent's testimony at these appearances are on file.

"4. The Respondent withdraws his Answer with respect to the matters hereinafter admitted. For the purposes of resolving this proceeding, the Respondent admits:

a. Respondent repeatedly had sexual intercourse with Mrs. Connie Erickson, wife of Richard Erickson, during the past one and one-half years. Respondent continued the relationship for about five months after he had notice of this investigation. Respondent conspired with Mrs. Erickson to deceive her husband as to the existence of this relationship. On one occasion the Respondent prepared a false notice of a legal secretarial course at William Mitchell Law School St. Paul, Minnesota, for Mrs. Erickson to show her husband so as to provide an excuse for her absence while she accompanied the Respondent to a judges' meeting in Minneapolis. This conduct became the subject of discussion among certain members of the community.

b. This is willful misconduct which, although not related to judicial duties, brings the judicial office into disrepute within the meaning of Rule 4(a)(3) of the Rules of the Board on Judicial Standards, and Minn.Stat. § 490.16(3).

c. This is conduct prejudicial to the administration of justice or conduct unbecoming a judicial officer that brings the judicial office into disrepute within the meaning of Rule 4(a)(4) of the Rules of the Board on Judicial Standards and Minn.Stat. § 490.16(3).

d. This conduct violates Canon 2 of the Code of Judicial Conduct, and is grounds for discipline under said Canon 2, Rule 4(a)(3) and (4) of the Rules of the Board on Judicial Standards, Minn.Stat. § 490.16(3) and Article 6, Section 9 of the Minnesota Constitution.

"5. The Respondent agrees to accept public censure from the Supreme Court which censure may set out the reasons for which it is given.

"6. The Respondent understands and agrees that a continuation of the relationship previously described with Mrs. Erickson while either of them is married to another is willful misconduct justifying further disciplinary proceedings. The Respondent agrees that the misconduct which he admits in this stipulation may be used in evidence against him in any such further disciplinary proceedings.

"7. The Respondent agrees that he will pay $5,000.00 of the costs of this proceeding. Respondent agrees to pay such sum on or before June 1, 1983, together with interest thereon computed at the rate of 8 percent per annum from December 1, 1982, to the date or dates of payment.

"8. The Respondent understands, and hereby agrees that the Complaint, Respondent's Answer, the transcript of Respondent's testimony before the Board on Judicial Standards and this Stipulation shall be filed with the Supreme Court.

"9. The Board on Judicial Standards hereby recommends to the Supreme Court that this proceeding be disposed of in accordance with the Stipulation.

"IN WITNESS WHEREOF, the parties have hereunto set their hands this 14 day of January 1983.

> THE BOARD ON JUDICIAL STANDARDS
> By /s/ Gene Halverson, Chairman
> GENE HALVERSON, Chairman
> /s/ Kelton Gage,
> Kelton Gage, Attorney for
> the Board on Judicial Standards
> /s/ Clement H. Snyder, Jr.
> The Honorable Clement H. Snyder, Jr.
> Respondent
> /s/ Jack S. Nordby
> Jack S. Nordby
> Attorney for Respondent

"1 The Legislature established the Board on Judicial Standards pursuant to authority contained in Minn. Const. art. VI, § 9 which states:

" 'The Legislature may also provide for the retirement, removal or other discipline of any judge who is disabled, incompetent or guilty of conduct prejudicial to the administration of justice.' Such Board is created by Minn.Stat. § 490.15 (1982):

"Subdivision 1. The board on judicial standards is established and consists of one judge of the district court, one judge of a municipal court, one judge of county court, two lawyers who have practiced law in the state for ten years and four citizens who are not judges, retired judges or lawyers. The executive secretary is appointed by the governor. Commencing July 1, 1980, the board shall appoint the executive secretary. All members shall be appointed by the governor with the advice and consent of the senate. No member shall serve more than two full four-year terms or their equivalent. Membership terminates if a member ceases to hold the position that qualified him for appointment."

## IV

This action originally was filed by Mrs. Snyder against the Board on Judicial Standards and against Mr. George Kurvers, individually and as executive secretary of the Board. She prayed for damages in excess of $50,000 against each defendant, plus exemplary damages "in an amount to deter these Defendants and others similarly situated from engaging in similar conduct in the future;" an injunction prohibiting defendants from similar conduct with respect to other innocent citizens of the State of Minnesota; and attorney fees in accordance with 42 U.S.C. § 1988 and Minn.Stat. § 13.08.

Plaintiff later dismissed the Board as a party defendant and pursued her claim against Mr. Kurvers in his individual capacity and as executive secretary of the Board.[1]

Plaintiff contends that her constitutional rights to privacy were violated by defendant Kurvers during the investigation conducted by him as executive secretary of the Board. She charges that Mr. Kurvers made numerous personal and intimate inquiries concerning her alleged sexual relations with the judge who was under investigation. She alleges deprivation of "rights to privacy in her personal affairs guaranteed by the United States Constitution and protected by the laws of the United States and the Minnesota Common Law" and that "plaintiff has been humiliated and embar-

---

1. Defendant Kurvers later retired from his position as executive secretary of the Board.

rassed in public and has suffered emotional distress."

## V

The district court rejected the contentions of plaintiff and granted the motion of defendant for summary judgment on the ground that defendant Kurvers satisfied the test for qualified immunity set forth in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In *Harlow,* the Supreme Court announced a single objective test for qualified immunity of public officials performing discretionary duties: that government officials performing discretionary functions "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." 457 U.S. at 818, 102 S.Ct. at 2738.[2]

This Court has affirmed summary judgment in qualified immunity cases where the challenged acts do not violate clearly established law. *Miller v. Solem,* 728 F.2d 1020 (8th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 145, 83 L.Ed.2d 84 (1984).

The district court in the present case held that the allegations of the plaintiff did not establish violation of a clear constitutional right to privacy. In *Nixon v. Administrator of General Services,* 433 U.S. 425, 457, 97 S.Ct. 2777, 2797, 53 L.Ed.2d 867 (1977), the former President challenged a statute authorizing the defendant to take custody of presidential papers and tape recordings. The former President contended that his privacy rights were violated. The Supreme Court held that although the President had "a legitimate expectation of privacy in his personal communication," the limited intrusion of the screening process did not violate any constitutional rights. *Id.* at 465, 97 S.Ct. at 2801.

The purpose of the doctrine of qualified immunity is to protect public officials called upon to perform discretionary tasks from personal liability for the good faith performance of these tasks. *Wentz v. Klecker,* 721 F.2d 244, 247 (8th Cir.1983). To enjoy qualified immunity, a public official must demonstrate that he performed duties requiring the exercise of discretion. *See Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). The district court found that defendant Kurvers was required to exercise a broad range of discretion which is crucial to maintaining the integrity of, and public confidence in, the judiciary.

The *Nixon* Court cautioned that "the merit of appellant's claim of invasion of privacy cannot be considered in the abstract." 433 U.S. at 458, 97 S.Ct. at 2797. The scope of privacy rights asserted must be evaluated in the light of the public interest in the disclosures and their intrusiveness. *Id.* Appellant notes that there have been cases recognizing privacy rights in procreational autonomy in situations involving private decisions as to whether to bear children. *E.g., Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). The district court in its decision recognized that courts and commentators have disagreed as to whether sexual conduct outside marriage is protected by the first or fourteenth amendment. Those finding that it is are nearly equally balanced with those finding it is not. Under these circumstances, there certainly are not "basic unquestioned constitutional rights" violated by defendant.

Plaintiff's mere articulation of a general privacy interest in this case, however, does not end the inquiry into the issue of immunity. The privacy interests asserted must

2. Prior to *Harlow,* the standard for qualified immunity contained two components, referred to as "objective" and "subjective" good faith. The "objective" element of the test was met by officials who did not know or could not have known reasonably that the action they took would violate the clearly established constitutional rights of another. The "subjective" element was satisfied if the public official acted without malice. *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). *Harlow* eliminated the "subjective" test. 457 U.S. at 818–19, 102 S.Ct. at 2738–39.

be examined in the light of the circumstances of the claim. In *Mitchell v. Forsyth,* — U.S. ——, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) the Supreme Court upheld a claim of qualified immunity from suit in a case charging violation of the fourth amendment. After a thorough examination of the circumstances, the Court held that former Attorney General Mitchell had not been guilty of violating constitutional rights clearly established at the time of his action authorizing the telephone wiretaps under attack. The disclosures in the present case occurred in the course of an investigation by an authorized State agency inquiring into charges of judicial misconduct. The State of Minnesota, like the other States of the American Union, has a compelling interest in maintaining standards for its judiciary. Any intrusions into privacy disclosed by the record in this case clearly were justified by the Board's investigation.

The record supports the conclusion of the district court that the executive secretary and the Board on Judicial Standards acted in good faith and violated no clearly established constitutional rights to privacy.

The summary judgment is affirmed.

### APPENDIX

### RULES OF BOARD ON JUDICIAL STANDARDS

Rule 1. Organization of Board

(a) Appointment of Members. The Board on Judicial Standards shall consist of one judge of district court, one judge of municipal court, one judge of county court, two lawyers who have practiced law in the state for ten years, and four citizens who are not judges, retired judges, or lawyers. Effective July 1, 1980, the executive secretary shall be appointed by the board. All members and alternates shall be appointed by the governor with the advice and consent of the senate.

(b) Alternate Members. Alternate members, to take the place of those disqualified or absent, shall be selected at the time and in the manner prescribed for initial appointments in each representative class, and shall serve at the call of the board chairperson.

(c) Term of Office.

(1) The term of each member and alternate shall be four years.

(2) No member shall serve more than two full four-year terms or their equivalent. A member selected to serve the remainder of an unexpired term shall not be considered to have served the equivalent of a full four-year term for purposes of this section.

(d) Vacancy.

(1) A vacancy on the board shall be deemed to occur:

(i) When a member retires from the board; or

(ii) When a judge, who is a member of the board ceases to hold the judicial office which he held at the time of his selection; or

(iii) When a lawyer ceases to be admitted to practice in the courts of this state or is appointed to a judicial office; or

(iv) When a lay member becomes a lawyer.

(2) Vacancies shall be filled by selection of a successor in the same manner as required for the selection of his predecessor in office. A member selected to fill a vacancy shall hold office for the unexpired term of his predecessor. All vacancies on the board shall be filled within 90 days after the vacancy occurs.

(3) Members of the board may retire therefrom by submitting their resignation to the board, which shall certify the vacancy to the governor and the supreme court.

(e) Duties and Responsibilities of Executive Secretary. The executive secretary shall have duties and responsibilities prescribed by the board, including the authority to:

(1) Receive information, allegations, and complaints;

(2) Make preliminary evaluations;

(3) Screen complaints;

(4) Conduct investigations;

(5) Recommend dispositions;

(6) Maintain the board's records;

(7) Maintain statistics concerning the operation of the board and make them available to the board, and to the supreme court;

(8) Prepare the board's budget for approval by the board, and administer its funds;

(9) Employ and supervise other members of the board's staff;

(10) Prepare an annual report of the board's activities for presentation to the board, to the supreme court, and to the public;

(11) Employ, with the approval of the board, special counsel, private investigators, or other experts as necessary to investigate and process matters before the board and before the supreme court. The use of the attorney general's staff prosecutors or law enforcement officers for this purpose shall not be allowed.

(f) Quorum and Chairperson.

(1) A quorum for the transaction of business by the board shall be five members of the board.

(2) The board shall elect from its members a chairperson and a vice-chairperson, each of whom shall serve a term of two years. The vice-chairperson shall act as chairperson in the absence of the chairperson.

(g) Meetings of the Board. Meetings of the board shall be held at the call of the chairperson; the vice-chairperson; the executive secretary; or the written request of three members of the board.

(h) Annual Report. At least once a year the board shall prepare a report summarizing its activities during the preceding year. One copy of this report shall be filed with the chief justice of the supreme court and other copies may be made available to the public by a majority vote of the full board.

(i) Expenses of the Board and Staff.

(1) The expenses of the board shall be paid from appropriations of funds to the Board on Judicial Standards.

(2) Members of the board shall be compensated for their services as provided by law.

(3) In addition to the executive secretary, the board may appoint other employees to perform such duties as it shall direct, subject to the availability of funds under its budget.

Rule 2. Jurisdiction and Powers of Board

(a) Powers in General. The board shall have the power to receive information, investigate, conduct hearings, and make recommendations to the supreme court concerning:

(1) Allegations of judicial misconduct;

(2) Allegations of physical or mental disability of judges; and

(3) Matters of voluntary retirement for disability.

(4) Review of a judge's compliance with Minn.Stat. 546.27.

(b) Persons Subject to Discipline. At any level of government, anyone exercising judicial powers and performing judicial functions, including judges assigned to administrative duties within the judicial branch, shall be subject to judicial discipline and disability retirement under these rules.

(c) Jurisdiction Over Sitting Judges. The board shall have exclusive jurisdiction over the conduct of all persons subject to discipline under section (b), including all sitting full and part-time judges. This jurisdiction shall include conduct that occurred prior to a judge assuming judicial office. In cases of sitting full-time judges, this jurisdiction shall be exclusive. In cases of sitting part-time judges, the board shall have exclusive jurisdiction in matters involving conduct occurring in a judicial capacity. The Lawyers Professional Responsibility Board may also exercise jurisdiction to consider whether discipline as a lawyer is warranted in matters involving conduct of a part-time judge not occurring in a judicial capacity, including conduct occur-

ring prior to the assumption of judicial office.

(d) Jurisdiction Over Former Judge. The Lawyers Professional Responsibility Board shall have jurisdiction over a lawyer who is no longer a judge with reference to allegedly unethical conduct that occurred during or prior to the time when the lawyer held judicial office, provided such conduct has not been the subject of judicial disciplinary proceedings as to which a final determination has been made by the supreme court.

(e) Subpoena and Discovery.

(1) At all stages of a proceeding under these rules, both the board and any judge being investigated shall be entitled to compel by subpoena the attendance and testimony of witnesses, including the judge as witness, and to provide for the inspection of documents, books, accounts, and other records.

(2) The power to enforce process may be delegated by the supreme court.

(f) Rules of Procedure and Forms. The board shall have the authority to submit rules of procedure for the approval of the supreme court, and to develop appropriate forms for its proceedings.

(g) Impeachment. Nothing in these rules shall affect the impeachment of judges under the Minnesota Constitution, Art. 8. (Amended March 26, 1981).

Rule 3. Immunity

Members of the board, referees, board counsel, and staff shall be absolutely immune from suit for all conduct in the course of their official duties.

Rule 4. Grounds for Discipline

(a) Grounds for a discipline shall include:

(1) Conviction of a felony;

(2) Willful misconduct in office;

(3) Willful misconduct which, although not related to judicial duties, brings the judicial office into disrepute;

(4) Conduct prejudicial to the administration of justice or conduct unbecoming a judicial officer, whether conduct in office or outside of judicial duties, that brings the judicial office into disrepute;

(5) Any conduct that constitutes a violation of the code of judicial conduct or professional responsibility.

(b) Proceedings Not Substitute for Appeal. In the absence of fraud, corrupt motive, or bad faith, the board shall not take action against a judge for making findings of fact, reaching a legal conclusion, or applying the law as he understands it. Claims of error shall be left to the appellate process.

Rule 5. Confidentiality

(a) Before Probable Cause Found.

(1) All proceedings shall be confidential until there has been a determination of probable cause and formal charges have been filed pursuant to Rule 8(c).

(2) The board shall establish a procedure for enforcing the confidentiality provided by this rule.

(3) A judge under investigation may waive his right to confidentiality prior to a filing of formal charges.

(b) Public Statements by Board. In any case in which the subject matter becomes public through independent sources or through a waiver of confidentiality by the judge, the board may issue statements as it deems appropriate in order to confirm the pendency of the investigation, to clarify the procedural aspects of the disciplinary proceedings, to explain the right of the judge to a fair hearing without prejudgment, and to state that the judge denies the allegations. The statement shall be first submitted to the judge involved for his comments and criticisms prior to its release, but the board in its discretion may release the statement as originally prepared.

(c) Disclosure for Judicial Selection, Appointment, or Assignment. If in connection with the selection or appointment of judges, any state or federal agency seeks information or written materials from the board concerning a judge, information may be divulged in accordance with procedures prescribed by the supreme court, including reasonable notice to the judge affected,

unless the judge signs a waiver. If in connection with the assignment of a retired judge to judicial duties any appropriate authority seeks information or written materials from the board about that judge, information may be divulged in accordance with procedures prescribed by the supreme court, including reasonable notice to the judge affected, unless the judge signs a waiver.

Rule 6. Procedure Prior to Probable Cause Determination

(a) Initiation of Procedure.

(1) An inquiry relating to conduct of a judge may be initiated upon any reasonable basis, including oral or written complaints made by judges, lawyers, court personnel, or members of the general public.

(2) The board may on its own motion make inquiry with respect to whether a judge is guilty of misconduct in office or is physically or mentally disabled.

(3) Upon request of the chief justice of the supreme court, the board shall make an investigation under this rule of the conduct or physical or mental condition of a judge.

(b) Absolute Privilege. A complaint submitted to the board or its staff or testimony related to the complaint shall be absolutely privileged, and no civil action predicated on the complaint may be instituted against any complainant or witness, or their counsel.

(c) Screening, Preliminary Investigation, and Evaluation.

(1) Upon receipt of a complaint, report, or other information as to conduct that might constitute grounds for discipline, the executive secretary shall conduct a prompt, discreet, and confidential investigation and evaluation.

(2) Under guidelines prepared by the board, the executive secretary shall, based on his investigation and evaluation, determine whether there exists sufficient cause to proceed against the judge. The executive secretary shall have the authority to dismiss unfounded complaints, but the results of all investigations shall be routinely submitted to the board.

(d) Discretionary Notice.

(1) Notice that a complaint has been made may be given to the judge named in the complaint.

(2) No action shall be taken on any complaint in which the judge is not notified within 90 days after the receipt of such complaint, and if not notified the complaint cannot be used against the judge.

(e) Probable Cause Determination.

(1) The board shall promptly consider the results of an investigation and evaluation conducted by the executive secretary. If the board determines that there is probable cause to proceed, it shall comply with Rule 8.

(2) A finding of probable cause shall require the concurrence of a majority of the full board.

(f) Insufficient Cause to Proceed.

(1) Upon determination that there is insufficient cause to proceed, the complainant, if any, shall be notified. If the judge has been informed of the proceeding, he shall also be notified of its termination, and the file shall be closed.

(2) A closed file may be referred to by the board in subsequent proceedings.

(3) If the inquiry was initiated as a result of notoriety or because of conduct that is a matter of public record, information concerning the lack of cause to proceed shall be released by the board.

(g) Dispositions in Lieu of Further Proceedings. Even though the board does not find probable cause to proceed with a formal hearing, it may make any of the following dispositions:

(1) The board may issue a private reprimand.

(2) The board may by informal adjustment dispose of a complaint by:

(i) Informing or admonishing the judge that his conduct is or may be cause for discipline;

(ii) Directing professional counseling or assistance for the judge; or

(iii) Imposing conditions on a judge's conduct.

Rule 7.   Interim Sanctions

(a) Suspension for Felony.  A judge shall be suspended with pay immediately by the supreme court without necessity of board action, upon the filing of an indictment or information charging him with a felony under state or federal law.  Such suspension shall not preclude action by the board with respect to the conduct which was the basis for the felony charge, before or after a conviction, acquittal, or other disposition of the felony charge.

(b) Suspension [for] Misdemeanor.  Conduct resulting in the filing of misdemeanor charges against a judge, if it adversely affects his ability to perform the duties of his office, may be grounds for immediate suspension with pay by the supreme court, without necessity of board action.  A conviction, acquittal, or other disposition on a misdemeanor charge, shall not preclude action by the board with reference to the conduct upon which the charge was based.

(c) Misdemeanor   Suspension   Review.  Any judge suspended under section (b) of this rule shall be given a prompt hearing and determination by the supreme court upon his application for review of the interim suspension order.

(d) Other Interim Suspension.

(1) Interim suspension with pay, pending final decision as to ultimate discipline, may be ordered by the supreme court in any proceeding under these rules.

(2) Upon a determination by the board of a judge's incompetence, there shall be an immediate interim suspension, with pay, pending a final disposition by the supreme court.

(e) Disability Suspension.  A judge who claims that a physical or mental disability prevents his assisting in the preparation of his defense in a proceeding under these rules shall be placed on interim suspension, with pay.  Once an interim suspension has been imposed, there shall be a determination of whether in fact there is such a disability.  If there is such a disability, the judge shall be retired.  If there is a finding of no disability, the disciplinary proceeding shall continue.

Rule 8.   Procedure Where Probable Cause Found

(a) Sworn Complaint or Statement.

(1) After a finding of sufficient cause to proceed, the board shall ask the complainant to file a detailed sworn complaint against the judge.  When a sworn complaint is not obtained, a clear statement of the allegations against the judge and the alleged facts forming their basis shall be prepared   by   the   executive   secretary.  Where more than one act of misconduct is alleged, each shall be clearly set forth.

(2) The judge shall be served promptly with a copy of the sworn complaint or statement of allegations.  Service shall be accomplished in accordance with the Rules of Civil Procedure.

(3) The documents served under section (2) shall require the judge to respond to the complaint or statement in writing within 20 days.  A personal appearance before the factfinder shall be permitted in lieu of or in addition to a written response.  In the event that the judge elects to appear personally, his statement shall be recorded.

(b) Termination after Response.  The board may terminate the proceeding and dismiss the complaint following the response by the judge, or at any time thereafter, and shall in that event give notice to each complainant and to the judge that it has found insufficient cause to proceed.

(c) Formal Statement of Charges.

(1) If termination under section (b) is not appropriate, the board shall file a formal statement of charges with the executive secretary.  Confidentiality ceases upon this filing.

(2) The judge shall be served promptly with a copy of the formal statement of charges and shall respond as provided in section (a)(2) and (3) of this rule.

(d) Notice of Hearing.

(1) Upon the filing of formal charges, the board shall schedule a public hearing.

The date shall be selected to afford the judge ample time to prepare for the hearing, but shall not be later than 30 days following the receipt of the judge's response under section (c)(2) of this rule. The judge and all counsel shall be notified of the time and place of the hearing.

(2) In extraordinary circumstances, the board shall have the authority to extend the hearing date as it deems proper.

(3) The judge and the board shall be entitled to discovery to the extent available in civil or criminal proceedings, whichever is broader.

Rule 9.   Formal Hearing

(a) Factfinder.

(1) The formal hearing shall be public and conducted before a factfinder, which may be the entire board, three-member hearing panels appointed by the chairperson, or a referee appointed by the supreme court.

(2) If the board directs that the hearing be held before a referee to be appointed by the supreme court, the board shall file an ex parte written request to the supreme court to appoint a referee for such purpose, accompanied by a copy of the complaint. The supreme court shall, within 10 days from receipt of such request, appoint a referee to conduct such hearing.

(3) The person designated to preside at a hearing shall be either a judge or a lawyer who is familiar with ruling on motions and admission of evidence.

(b) Rules of Evidence and Due Process. In the hearing, all testimony shall be under oath, the Minnesota Rules of Evidence shall apply, and the judge shall be accorded due process of law.

(c) Presentation:   Burden   of   Proof; Cross-examination;   Recording.

(1) An attorney or attorneys of the board's staff, or special counsel retained for the purpose, shall present the matter to the factfinder.

(2) The board has the burden of proving by clear and convincing evidence the facts justifying action.

(3) The judge shall be permitted to adduce evidence and produce and cross-examine witnesses, subject to the Minnesota Rules of Evidence.

(4) Every formal hearing conducted under these rules shall be recorded verbatim.

(d) Amending Allegations.   By leave of the board or by consent of the judge, the statement of charges may be amended after commencement of the hearing only if the amendment is technical in nature and the judge and his counsel are given adequate time to prepare a response.

Rule 10.     Procedure   Following   Formal Hearing

(a) Submission by Factfinder.   The factfinder shall submit its findings and recommendations, along with the record and transcript of testimony, to the board for review.   The same materials shall also be provided to the judge under investigation.

(b) Objections to Findings.   Counsel for the judge and board may submit written objections to the findings and recommendations.

(c) Review by the Board.   The findings and conclusions and the hearing record shall be promptly reviewed by the board. The board may substitute its judgment for that of the factfinder.

(d) Disciplinary Sanctions.   The board's decision shall include a recommendation to the supreme court of any of the following sanctions:

(1) Removal;

(2) Retirement;

(3) Imposing discipline as an attorney;

(4) Imposing limitations or conditions on the performance of judicial duties;

(5) Reprimand or censure;

(6) Imposing a fine;

(7) Assessment of costs and expenses;

(8) Any combination of the above sanctions.

(e) Recommended Discipline.

(1) A recommendation for discipline shall be reported to the court only if concurred

in by a majority of all members of the board.

(2) If a majority of the members of the board fail to concur in a recommendation for discipline, the matter shall be dismissed.

(3) Any dissenting opinion shall be transmitted to the supreme court with the majority decision.

Rule 11.  Costs

(a) Witness Fees.

(1) All witnesses shall receive fees and expenses to the same extent allowable in an ordinary civil action.

(2) Expenses of witnesses shall be borne by the party calling them, unless:

(i) Physical or mental disability of the judge is in issue, in which case the board shall reimburse the judge for the reasonable expenses of the witnesses whose testimony related to the disability; or

(ii) The judge is exonerated of the charges against him, in which case the supreme court may determine that the imposition of costs and expert witness fees would work a financial hardship or injustice upon him and order that those fees be reimbursed.

(b) Transcript Cost.  A transcript of all proceedings shall be provided to the judge without cost.

(c) Other Costs.  All other costs of these proceedings shall be at public expense.

Rule 12.  Supreme Court Review

(a) Filing and Service.  The board shall, at the time it files its record, findings, and recommendations with the court, serve copies upon the respondent judge.  Proof of service shall also be filed.

(b) Prompt Consideration.  Upon the filing of a recommendation for discipline or disability retirement, the court shall promptly docket the matter for expedited consideration.

(c) Briefs.  The board and the judge shall file briefs with the court in accordance with the requirements of Rule 128 of the Rules of Appellate Procedure.

(d) Additional Findings and Filings; Supplemental Record.

(1) If the court desires an expansion of the record or additional findings with respect either to the recommendation for discipline or to the sanction to be imposed, it shall remand the matter to the board with appropriate directions, retaining jurisdiction, and shall hold the matter pending receipt of the board's filing of the additional record.

(2) The court may order additional filings or oral argument as to specified issues or the entire matter.

(3) The court without remand and prior to the imposition of discipline may accept or solicit supplementary filings with respect to medical or other information, provided that the parties have notice and an opportunity to be heard.

(e) Delay for Further Proceedings.  The court, on receipt of notice of an additional proceeding before the board involving the same judge, may delay decision and hold the matter pending the board's termination of this additional proceeding.  In the event that additional recommendations for discipline of the judge are filed, the court may impose a single sanction covering all recommendations.

(f) Decision.  The court shall review the record of the proceedings on the law and the facts and shall file a written opinion and judgment directing such disciplinary action as it finds just and proper, accepting, rejecting, or modifying in whole or in part, the recommendations of the board.

(g) Consideration of Lawyer Discipline.  The court, when considering removal of a judge, shall determine whether discipline as a lawyer also is warranted.  If removal of a judge is deemed appropriate by the court, it shall notify the judge and the Lawyers Professional Responsibility Board and give them an opportunity to be heard on the issue of the lawyer discipline, if any, to be imposed.

(h) Charge Against Supreme Court Justice.  Any charge filed against a member of the supreme court shall be heard and

submitted to the court in the same manner as charges concerning other judges, except that other members of the court shall disqualify themselves under Minn.Stat. 2.724, subd. 2, as they deem necessary.

(i) Motion for Rehearing. In its decision, the supreme court may direct that no motion for rehearing will be entertained, in which event its decision shall be final upon filing. If the court does not so direct and the respondent wishes to file a motion for rehearing, he may present a motion for rehearing within 15 days after filing of the decision.

Rule 13. Special Provisions for Cases Involving Mental or Physical Disability

(a) Procedure. In carrying out its responsibilities regarding physical or mental disabilities, the board shall follow the same procedures that it employs with respect to discipline for misconduct.

(b) Representation by Counsel. If the judge in a matter relating to physical or mental disability is not represented by counsel, the board shall appoint an attorney to represent him at public expense.

(c) Medical Privilege.

(1) If the complaint involves the physical or mental condition of the judge, a denial of the alleged condition shall constitute a waiver of medical privilege, and the judge shall be required to produce his medical records.

(2) If medical privilege is waived, the judge is deemed to have consented to a physical or mental examination by a qualified medical practitioner designated by the board. The report of the medical practitioner shall be furnished to the board and the judge.

Rule 14. Involuntary Retirement

(a) Procedure. A judge who refuses to retire voluntarily may be involuntarily retired by the supreme court. If attempts to convince a judge to retire voluntarily fail, then the board shall proceed to file a formal complaint, hold a public hearing, make findings of fact, and present recommendations to the supreme court.

(b) Effect of Involuntary Retirement. A judge who is involuntarily retired shall be ineligible to perform judicial duties pending further order of the court and may, upon order of the court, be transferred to inactive status or indefinitely suspended from practicing law in the jurisdiction.

Rule 15. Amendment of Rules

As procedural and other experience may require or suggest, the board may petition the supreme court for further rules of implementation or for necessary amendments to these rules.