**Frances A. WARNER, Appellant,**

**v.**

**John A. GRAHAM, Duainne S. Bourcy, Wayne J. Anderson and Weldee Baetsch, Appellees.**

Nos. 87–5252, 87–5391.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 17, 1987.

Decided April 27, 1988.

Dean A. Rindy, West Fargo, N.D., for appellant.

David C. Thompson, Fargo, N.D., for appellees.

Before JOHN R. GIBSON, BOWMAN and WOLLMAN, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Frances Warner, a program specialist employed by the Lake Region Human Services Center, provided preventive drug and education services to school and community groups. She was suspended and then dis-

---

**6.** We wish to thank Muhammad's appointed counsel, Kirk T. May, for the excellent representation he provided.

charged because of her admitted use of peyote and the adverse effect this use would have on her ability to effectively perform her job. She claims, as a member of the Native American Church, that her use of peyote was associated with religious practices and therefore entitled to first amendment protections. Warner brought this 42 U.S.C. § 1983 action against four employees of the North Dakota Department of Human Services: John Graham, Executive Director; Wayne Anderson, Deputy Director; Weldee Baetsch, Director of Personnel; and Duainne Bourcy, Regional Director of the Lake Region Human Services Center, a branch of the Department of Human Services. The primary issue on appeal is whether the district court erred in denying the supervisors' claims that their acts were protected by qualified immunity. The supervisors also argue that the district court interpreted the findings of certain administrative agencies incorrectly and erred in concluding that the supervisors did not use the least restrictive means of achieving a compelling state interest and in granting Warner declaratory relief. Warner, on the other hand, argues that the district court erred in giving preclusive effect to certain administrative agencies' factual findings. We reverse the judgment of the district court, 675 F.Supp. 1171 (1987), and order that judgment be entered for the supervisors on the basis of qualified immunity.

In 1982, Warner became a full-time program specialist with the Lake Region Human Services Center. Her primary function was to provide alcohol and drug education services of a preventive nature to students in grades 5 to 12. This involved about 45 percent of her allocated time. In addition, about 25 percent of her time was alloted to conducting chemical abuse awareness sessions with adults and community groups, developing a "minor in possession" program, as well as assisting with sexual abuse treatment programs. Twenty percent of her time was to be spent assisting addiction counselors with case plans and treatment for addicted individuals and their families. The remainder of her efforts had to do with assessments and data collection regarding the effectiveness of these services.

On July 13, 1984 Warner and her husband were arrested and charged with distribution and possession with intent to distribute peyote in violation of 21 U.S.C. § 841(a)(1) (1982) and 18 U.S.C. § 2 (1982). On July 16, Warner informed Bourcy of her arrest, admitted that she used and would continue to use peyote and explained that it was associated with her religious practices in the Native American Church. Bourcy contacted Anderson and the two decided that based on previous practices in which other employees had been charged with felonies, Warner should be suspended for 30 days without pay, pending the outcome of the criminal charges. Bourcy wrote Warner informing her of this fact and also stated that if the charges were dropped or she was acquitted, she might be reinstated. Personnel guidelines only permitted 30-day suspensions and so on August 14, 1984, with the criminal charges still pending, Warner was suspended without pay for an indefinite period. On September 25, Bourcy met with Anderson, Graham and two assistant attorneys general. Bourcy informed them that Warner admitted using peyote and intended to continue to do so and that several school officials and community members were unwilling to allow her into their schools and community groups even if she were acquitted. Bourcy did not explain at that time that Warner's peyote use was connected with her practice of religion. It was agreed that she be fired.

On September 27, Bourcy sent Warner a letter informing her that she was fired because of her admitted use of peyote and the adverse effect this use would have on her working relationships with clients and addiction professionals.

On the same date, and the record in the district is not clear as to whether Bourcy or the state attorneys general knew of it, the district court in Warner's criminal case denied a motion for acquittal on a number of grounds, including the religious justifica-

tion for the use of peyote.[1] The district court determined that there was a question as to whether the Warners, who were not Indians, were properly members of the Native American Church in view of church requirements that such members be at least 25 percent Indian, and whether their religious beliefs were conscientiously held. The Warners subsequently were tried and were acquitted by a jury of the criminal charges on October 29, 1984.

Warner filed a personal grievance against Bourcy's decision to suspend and terminate her. On October 2, 1984, an internal grievance procedure hearing was held before a hearing officer, who recommended that Warner's termination be upheld. On November 8, 1984, Graham upheld Bourcy's termination decision, finding that Warner's use of peyote coupled with public knowledge of such use would have a direct adverse effect on her ability to carry out the duties and responsibilities of her job, and thus served as "cause" for her termination. Graham stated that he reached his decision after considering Warner's claimed constitutional privilege to use peyote, and he disclaimed any intention to deny those rights. He concluded that the termination was because of her use of peyote which was deemed inappropriate for her position and that reinstatement would harm the department's clients and other public agencies served by it. He recommended, however, that she be given priority consideration for other positions and directed that she be provided with weekly job opening announcements. Warner appealed to the State Personnel Board. There was a hearing and on January 28, 1985, the Board filed proposed findings of fact, conclusions of law and a recommendation stating that Warner's acquittal removed use and possession of peyote as a ground for dismissal and that the only "cause" remaining was her effectiveness as an alcohol and drug educator. Since the effect on her job duties was unknown, the State Personnel Board ordered reinstatement with full backpay and benefits.

Baetsch and Bourcy met with Warner on February 6, 1985, to discuss her reinstatement, and Warner signed in for work that afternoon. The following day, however, Warner told Baetsch that she wanted her reinstatement revoked. Over the next several days she met with Baetsch and Bourcy as well as other supervisors and staff members to discuss the terms of her reinstatement. Conversations continued over a few days but culminated with Warner submitting a written resignation on February 21, which was accepted on March 26, 1985.

Warner then applied for unemployment benefits, a number of hearings occurred, and on March 15, 1985, the Claims Deputy issued a determination disqualifying her from benefits because she voluntarily quit her job. An Appeals Referee affirmed this determination and on October 16, 1985, the Executive Director of Job Services affirmed the Appeals Referee's decision, finding that Warner's resignation in February, 1985, was without good cause attributed to her employer. Warner did not seek administrative or judicial appeal from the Director's decision. The latter two orders were considered by the district court and given preclusive effect.

Meanwhile, on September 23, 1985, Warner brought this 42 U.S.C. § 1983 action alleging that the four supervisors violated the free exercise clause of the first amendment. The district court granted Warner's request for declaratory judgment. Applying the balancing test set forth in *Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963), and subsequently applied in *Thomas v. Review Bd.,* 450 U.S. 707, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1980), and *Hobbie v. Unemployment Comm'n,* 480 U.S. 136, 107 S.Ct. 1046, 94 L.Ed.2d 190 (1987), the court concluded that although the supervisors had a compelling interest in controlling illegal drug abuse, the supervisors failed to demonstrate that Warner's termination was the least restrictive means that could have been employed "as is illustrated by her subsequent reinstatement to other duties," and therefore, the supervisors violated Warner's first

---

**1.** *United States v. Warner,* 595 F.Supp. 595 (D.N.   D.1984).

amendment free exercise rights. It rejected the argument that Warner's termination was motivated by her loss of credibility through public knowledge and condemnation of her use of peyote, rather than disapproval of her religious practices, concluding that this was a subjective motivation, and not a proper consideration in free exercise analysis. It concluded, however, that her reinstatement on February 6, with full backpay and benefits, satisfied the least restrictive consideration and ended any constitutional violation. The supervisors were therefore liable only for the period from termination until reinstatement for which Warner had received backpay. The court reserved the issue of any remaining damages for future determination.

The court then denied the supervisors' motion for summary judgment based on qualified immunity concluding that Warner's right to use peyote was clearly established at the time of her termination and that the supervisors should have known that her use of peyote was entitled to free exercise protection.

This court has recently stated that qualified immunity accommodates competing social interests by ensuring that officials who "knowingly violate the law" are held accountable, while officials who reasonably exercise their discretion may do so without fear of being sued. *Arcoren v. Peters,* 829 F.2d 671, 673 (8th Cir.1987) (en banc) (citations omitted). When performing a discretionary function, a government official is entitled to qualified immunity from suit if, at the time of his conduct, it was not "clearly established" that his actions would violate the plaintiff's constitutional rights.

*Id.* at 673, 676–77 (citations omitted).[2] The qualified immunity defense fails when the official acts in a manner that disregards undisputed constitutional guarantees. *Id.* at 673. For this reason, we have held that public officials must "apply well-developed legal principles in carrying out their duties." *Lappe v. Loeffelholz,* 815 F.2d 1173, 1178–80 (8th Cir.1987). However, an official is not expected to anticipate the law's development or its possible application to a unique situation. *Arcoren,* 829 F.2d at 676–77. Thus, an official may not be charged with knowledge that his conduct was unlawful unless it has been previously identified as such, and an official does not forfeit his immunity because he "gambled and lost on the resolution of an open question." *Id.* at 676–77 (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 535, 105 S.Ct. 2806, 2820, 86 L.Ed.2d 411 (1985).

The sacramental use of peyote has been recognized in limited circumstances as a protected religious practice under the free exercise clause. For example, peyote is exempt from the provisions of the Controlled Substances Act when used in bona fide religious ceremonies of the Native American Church and members of the Native American Church so using peyote are exempt from registration. 21 C.F.R. § 1307.31 (1987).[3] A number of states have also exempted the sacramental use of peyote from their Controlled Substances Acts.[4] Similarly, several state courts have held that state laws forbidding the possession of peyote are unconstitutional as applied to its possession by members of the Native American Church in religious cere-

---

**2.** No argument is made that the supervisors were not performing a discretionary function.

**3.** 21 C.F.R. § 1307.31 provides:
NATIVE AMERICAN CHURCH. The listing of peyote as a controlled substance in Schedule I does not apply to the non drug use of peyote in bona fide religious ceremonies of the Native American Church and members of the Native American Church so using peyote are exempt from registration. Any person who manufactures peyote for or distributes peyote to the Native American Church, however, is required to obtain registration annual-

ly and to comply with all other requirements of law.

**4.** *See e.g.* Ariz.Rev.Stat.Ann. § 13–3402 (Supp. 1986); Col.Rev.Stat. § 12–22–317(3) (1985) (repealed and reenacted in 1981); Iowa Code Ann. § 204.204(8) (1987); Kan.Stat.Ann. § 65–4116 (c)(8) (1985); Minn.Stat.Ann. § 152–02(4) (Supp. 1987); Nev.Rev.Stat.Ann. § 453.541 (1985); N.M.Rev.Stat.Ann. § 30–31–6(D) (Supp.1980); S.D. Codified Laws Ann. § 34–20B–14(17) (1986) (adopted in 1970); Wis.Stat.Ann. § 161.115 (West 1974); Wyo.Stat. § 35–7–1044 (1977).

monies.[5] *See, e.g., People v. Woody,* 61 Cal.2d 716, 40 Cal.Rptr. 69, 394 P.2d 813 (1964);[6] *Whitehorn v. State,* 561 P.2d 539 (Okla.Crim.App.1977); *State v. Whittingham,* 19 Ariz.App. 27, 504 P.2d 950 (1973), *cert. denied,* 417 U.S. 946, 94 S.Ct. 3071, 41 L.Ed.2d 667 (1974).

However, we cannot say that it was "clearly established" at the time Warner was fired that her use of peyote was privileged under the free exercise clause of the first amendment. On the very day that Warner was fired, the district court in Warner's criminal prosecution denied Warner's motion to dismiss rejecting her claim she was entitled to the exemption of 21 C.F.R. § 1307.31. *Warner,* 595 F.Supp. at 598. The court held that a question of fact existed as to whether Warner used peyote in bona fide religious ceremonies and whether Warner, a non-Indian, was a member of the Native American Church, in view of the fact that Church by-laws required members to be at least one-quarter Native American Blood. Moreover, a legitimate question of law existed as to whether a non-Indian may be entitled to the exemption of 21 C.F.R. § 1307.31. While both *Peyote Way Church of God v. Smith,* 742 F.2d 193 (5th Cir.1984), and *Native American Church of New York v. United States,* 468 F.Supp. 1247 (S.D.N.Y.1979), aff'd, 633 F.2d 205 (2d Cir.1980), extended the exemption beyond members of the Native American Church, the district court in *Warner,* 595 F.Supp. at 598, examined the legislative history leading up to the promulgation of 21 C.F.R. § 1307.31 and concluded that Congress did not intend a broad exemption for the religious use of peyote by non-Native American Church Members or non-Indians. *Id.* at 598–99. Thus, we cannot say that at the time Warner was fired that it was clearly established her use of peyote was entitled to first amendment protections. *Mitchell,* 472 U.S. at 535, 105 S.Ct. at 2820.

Even if we were to conclude that Warner had a clearly established constitutional right to use peyote, it is insufficient for immunity purposes to determine only if a "clearly established" constitutional right exists. *See Myers v. Morris,* 810 F.2d 1437, 1458–59 (8th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987); *Snyder v. Kurvers,* 767 F.2d 489, 497–98 (8th Cir.1985). Qualified immunity would be meaningless if it could be defeated merely by the recitation of some well-recognized right and a conclusory allegation that the defendant infringed it. *Myers,* 810 F.2d at 1459, n. 16. In deciding a question of qualified immunity, as we have discussed earlier, we look to whether established law informed the supervisors that their conduct violated "basic, unquestioned constitutional rights." *See Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214 (1975). The Seventh Circuit in discussing the meaning of clearly established rights has suggested that if the existence of a right or the degree of protection it warrants in a particular context is subject to a balancing test the right can rarely be considered "clearly established," at least in the absence of closely corresponding factual and legal precedent. *Benson v. Allphin,* 786 F.2d 268, 276 (7th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 172, 93 L.Ed.2d 109 (1986), cited in *Myers,* 810 F.2d at 1462; *see also Lappe,* 815 F.2d at 1179–80. The balancing test required by *Sherbert, supra,* and its progeny was the

---

5. In at least one state, however, the court has upheld the constitutionality of a state statute making it unlawful for any person to [possess, control, or sell] peyote. The statute was upheld on the ground that the first amendment does not authorize a person, "in the exercise of his religion to commit acts which constitute threats to the public safety, morals, peace and order." *State v. Bullard,* 267 N.C. 599, 148 S.E.2d 565, 568–69 (1966), *cert. denied,* 386 U.S. 917, 87 S.Ct. 876, 17 L.Ed.2d 789 (1967).

6. The Supreme Court in *McDaniel v. Paty,* 435 U.S. 618, 98 S.Ct. 1322, 55 L.Ed.2d 593 (1978), noted the decision in *Woody* but expressly declined to pass on the conclusion reached, recognizing that the case "[is] illustrative of the general nature of free exercise protections and the delicate balancing required by our decisions in *Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963), and *Wisconsin v. Yoder,* [406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972)], when an important state interest is shown." *McDaniel,* 435 U.S. at 628 n. 8, 98 S.Ct. at 1329 n. 8.

subject of the district court's decision and is one of the battlegrounds of this appeal. Moreover, although there are a number of criminal prosecutions involving peyote use,[7] and several cases involving the denial of unemployment compensation benefits after an employee is discharged because of a conflict between work and religious beliefs,[8] we are aware of no legal precedent which controls this case. In fact, the Supreme Court granted certiorari to decide whether a state violated the free exercise clause of the first amendment by denying unemployment benefits to two drug counselors, fired after they ingested peyote during a ceremony of the Native American Church. *Smith v. Employment Div.*, 301 Or. 209, 721 P.2d 445 (1986), *cert. granted,* — U.S. ——, 107 S.Ct. 1368, 94 L.Ed.2d 684 (1987); *Black v. Employment Div.*, 301 Or. 221, 721 P.2d 451 (1986), *cert. granted,* — U.S. ——, 107 S.Ct. 1368, 94 L.Ed.2d 684 (1987).[9] Thus, in February 1985, when the supervisors fired Warner a "legitimate question" existed regarding whether Warner's first amendment rights were violated. *See Mitchell*, 472 U.S. at 535 n. 12, 105 S.Ct. at 2820 n. 12. This conclusion is sufficient to sustain a claim of qualified immunity. *See Arcoren*, 829 F.2d at 676. Accordingly, we reverse the judgment of the district court and order that judgment be entered in favor of appellees.

---

**7.** *See, e.g., Woody,* 40 Cal.Rptr. at 69, 394 P.2d at 813; *Whitehorn,* 561 P.2d at 539; *Whittingham,* 504 P.2d at 950.

**8.** *See, e.g., Hobbie v. Unemployment Comm'n,* 480 U.S. 136, 107 S.Ct. 1046, 94 L.Ed.2d 190 (1987); *Thomas v. Review Bd.,* 450 U.S. 707, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1980); *Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963).

**9.** The cases were argued on December 8, 1987, but as of this time have not been decided.