NATIVE AMERICAN CHURCH OF
NEW YORK, Alan Birnbaum, Min-
ister and Custodian, Plaintiffs,

v.

UNITED STATES of America, Griffin
Bell, Attorney General, Defendants.

No. 78 Civ. 1217(MP).

United States District Court,
S. D. New York.

April 17, 1979.

Alan Birnbaum pro se.

Robert B. Fiske, Jr., U. S. Atty., S. D. N.
Y., by Marjorie A. Silver, Sp. Asst. U. S.
Atty., New York City, for defendants.

OPINION

POLLACK, District Judge.

Cross-motions for summary judgment are
before the Court in pursuance of Federal
Rule of Civil Procedure 56. For the reasons
appearing hereafter, the motion of the
plaintiffs will be denied and the motion of
the defendants will be granted in part and
denied in part. The only issue which sur-
vives for trial is the question of whether the
Native American Church of New York is a
bona fide religious organization intending
to use peyote, a psychedelic drug, for sacra-

mental purposes and therefore entitled to the exemption of such organizations from the provisions of Controlled Substances Act of 1970 (hereafter referred to as the "Act") 21 U.S.C. § 812(c), Schedule I (c)(12), which apply to and control the use of peyote.

## I.

For many years there has existed, primarily in the Western States, a religious organization of American Indians known as the Native American Church. This Church believes that peyote is a deity. Members of the Church partake of peyote during religious ceremonies. The sacramental use of peyote in bona fide religious ceremonies by the Native American Church and its members is expressly exempted from the controls of the Act by regulation of the Drug Enforcement Administration ("DEA" hereafter). "The listing of peyote as a controlled substance in Schedule I [of the Controlled Substances Act, 21 U.S.C. § 812(c)] does not apply to the nondrug use of peyote in bona fide religious ceremonies of the Native American Church, and members of the Native American Church so using peyote are exempt from registration. Any person who manufactures peyote for or distributes peyote to the Native American Church, however, is required to obtain registration annually and to comply with all other requirements of law." (21 C.F.R. § 1307.31).

In 1976, Alan Birnbaum founded the Native American Church of New York and is now its minister and custodian. It is not affiliated with the Native American Church described above, and only a few of its roughly one thousand members are American Indians. The Native American Church of New York allegedly believes that all psychedelic drugs, including peyote, are deities.

Birnbaum petitioned the DEA to amend 21 C.F.R. § 1307.31 to exempt the use of all psychedelic drugs in religious ceremonies of all churches that believe that psychedelic drugs are deities. In Birnbaum's amended version, 21 C.F.R. § 1307.31 would have provided:

The listing of Psychedelics as controlled substances in schedule I shall not apply to the nondrug use of these substances in bona fide religious ceremonies of Churches where these substances have been shown to be central to the existence of that Church, in that they are objects of worship and considered deities in themselves. Members of Churches so using Psychedelics shall be exempt from registration. Any person who manufactures Psychedelics for or distributes Psychedelics to these Churches, however, is required to obtain registration annually and to comply with all other requirements of law.

It shall be understood that these substances include the following: LSD, DMT, DET, marijuana, peyote, psilocybin, psilocin, mescaline, and their salts, isomers, esters, and analogues.

The DEA denied Birnbaum's petition.

Birnbaum and the Native American Church of New York now sue for a declaration that: "(1) Plaintiff has the First Amendment right to possess and commune with his God; (2) Any Church or person establishing honest belief in a substance and honest worship of a substance as God has the First Amendment right to possess and worship that substance; and (3) Any Church or person so establishing honest belief and worship of a substance as God has the right to be licensed by the Drug Enforcement Administration as a distributor or manufacturer of said substance to said individuals or churches."

If this *pro se* complaint is read liberally, three claims for relief can be inferred from it: (1) it violates the free exercise clause to prohibit any church from manufacturing, distributing or using in religious ceremonies any psychedelic drug that that church believes is a deity; (2) the Controlled Substances Act does not prohibit the use of peyote in religious ceremonies of any church that believes that peyote is a deity; and (3) if the Controlled Substances Act does not prohibit the use of peyote in religious ceremonies of the Native American Church, but does prohibit the use of peyote

in religious ceremonies of other churches that believe that peyote is a deity, then the Act and regulation thereunder violate the due process clause.

## II.

■ Insofar as the complaint asserts a right to manufacture, distribute or use proscribed drugs other than peyote, it must be dismissed. Congress can constitutionally control the use, even for religious purposes, of drugs that it determines to be dangerous. *Leary v. United States*, 383 F.2d 851 (5th Cir. 1967), *cert. denied on this issue*, 392 U.S. 903, 88 S.Ct. 2058, 20 L.Ed.2d 1362 (1968), *rev'd on other grounds*, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969); *see also United States v. Kuch*, 288 F.Supp. 439 (D.D.C.1968).

Congress has determined that the use of controlled substances has "a substantial and detrimental effect on the health and general welfare of the American people," 21 U.S.C. § 801(2). The particular drugs that the plaintiffs seek to use all are listed on Schedule I of the Controlled Substances Act, 21 U.S.C. § 812(c), and as such have "a high potential for abuse," "no currently accepted medical use," and "a lack of accepted safety for use" even under supervision. 21 U.S.C. § 812(b)(1). Severe penalties are prescribed for the possession of such substances. *See, e. g.*, 21 U.S.C. § 841(a). These conclusions leave no room for a Court to substitute its judgment for that of Congress.

The plaintiffs contend also that the defendant in *Leary, supra*, used marijuana only as a sacrament or aid to worship, whereas the plaintiffs here believe that psychedelics are deities in themselves. Even assuming, however, that the plaintiffs' interest in using psychedelics is weightier than the defendant's interest in *Leary*, their interest still must be subordinated to the important purposes served by the Controlled Substances Act.

■ Consequently, the defendants are entitled to summary judgment dismissing allegations and a claim for relief as to drugs other than peyote.

## III.

In the Drug Abuse Control Amendments of 1965, Congress for the first time controlled the possession, consumption and sale of peyote. 79 Stat. 226 § 3(a). The 1965 Amendments were later superseded by the Act, which carried forward the controls on peyote, 21 U.S.C. § 812(c), Schedule I (c)(12). The DEA concluded that Congress did not intend in the 1965 Amendments or the 1970 Act to prohibit the use of peyote in religious ceremonies of the Native American Church. In consequence, the DEA promulgated the regulatory exemption quoted above.

The defendants contend that the exemption of the sacramental use of peyote was intended by Congress to be limited to such use by the Native American Church only, and not to include use thereof by other religious groups. On the other hand, the plaintiffs contend that nothing in the Act or the DEA regulation establishes an intent so to restrict use of peyote and that any bona fide religious organization that believes peyote is a deity is free to make religious use of this drug and to manufacture it for such use. There is no warrant in the legislation or the DEA regulation for the notion that churches may engage in manufacture of the drug, but there is force to the claim that the use of peyote for sacramental purposes where peyote is regarded as a deity is not to be restricted solely to the Native American Church.

As noted above, Congress first proscribed peyote in the Drug Abuse Control Amendments of 1965, which was introduced in the House as H.R. 2. As initially passed by the House, H.R. 2 exempted from control "peyote (mescaline) but only insofar as its use is in connection with the ceremonies of a bona fide religious organization." 111 Cong.Rec. 14608 (1965). H.R. 2 was referred to the Senate Committee on Labor and Public Welfare, which recommended that the exemption for peyote be deleted. The Committee stated:

The committee determined that it would not be desirable to specify drugs

other than barbiturates and amphetamines as subject to the controls of the bill, but determined that the other classes of drugs are to be brought under control of the bill on a case-by-case basis by the Secretary of Health, Education, and Welfare under the standards prescribed in the legislation. In accordance with this determination, the committee omitted specific reference to peyote as a substance subject to the provisions of the legislation. It is expected that peyote will be subject to the same consideration as all other drugs in determining whether or not it should be included under the provisions of the legislation.

(S.Rep.No.89–337, quoted at 111 Cong.Rec. 14609 (1965)).

Senator Yarborough stated on the floor:

The Committee on Labor and Public Welfare has approved three amendments that have been endorsed by the administration.

The first amendment would delete specific reference to peyote, in accordance with the committee's decision to omit specific references to any drug other than barbiturates and amphetamines. The legislation provides for including peyote or any other drug with a potential for abuse under the provisions of the legislation on the basis of scientific review and the use of advisory groups. Many drugs other than the barbituates and amphetamines—such as the tranquilizers—may be brought within the scope of the legislation following its enactment.

(111 Cong.Rec. 14611 (1965)). The Senate passed H.R. 2 as amended by the Committee, with the peyote exemption deleted. *Id.*

When the Senate version of H.R. 2 was returned to the House, Congressman Harris said:

The last amendment of substance made by the Senate deletes the provision of the House bill which provided that the term "depressant or stimulant drug" does not include peyote used in connection with ceremonies of a bona fide religious organization.

Some concern has been expressed to many by the religious groups affected, and by certain civil liberties organizations concerning the possible impact of this amendment on religious practices protected by the first amendment to the Constitution.

Two court decisions have been rendered in this area in recent years. One, a decision by Judge Yale McFate in the case of *Arizona v. Attakai*, No. 4098, in the superior court of Maricopa County, Phoenix, Ariz., July 26, 1960; and a California decision, *People against Woody*, decided August 24, 1964, in the Supreme Court of California. Both these cases held that prosecutions for the use of peyote in connection with religious ceremonies was a violation of the first amendment to the Constitution.

In view of all this, I requested the views of the Food and Drug Administration and have been assured that the bill, even with the peyote exemption appearing in the House-passed bill, cannot forbid bona fide religious use of peyote.

(111 Cong.Rec. 15977 (1965)).

The House then passed H.R. 2 as amended by the Senate.

In 1970 Congress enacted a comprehensive revision of the narcotics laws, the Controlled Substances Act of 1970, which carried forward the controls on peyote, 21 U.S.C. § 812(c), Schedule I (c)(12). During hearings on this legislation, there occurred the following exchange between Congressman Satterfield and Mr. Sonnenreich of the Bureau of Narcotics and Dangerous Drugs:

Mr. Satterfield. I have one other question. I recall when we were discussing dangerous drugs a few years ago, the question came up about the Native American Church involving Indians in the west who use and have for centuries used peyote in connection with religious services. It is my understanding that they enjoy an exemption under the current law.

My question is whether in any of the bills we have before us, if passed, would in any way affect this present exemption?

Mr. Sonnenreich. In the first instance, Mr. Satterfield, the Native American Church did ask us by letter as to whether or not the regulation, exempting them by regulation, would be continued and we assured them that it would because of the history of the church. We presently are involved in another hearing regarding another church that is a non-Indian church that is seeking the exemption and the order is going to be published. I believe, either today or tomorrow denying them the same exemption as the Native American Church.

We consider the Native American Church to be sui generis. The history and tradition of the church is such that there is no question but that they regard peyote as a deity as it were, and we will continue the exemption.

Mr. Satterfield. You do not see anything in the Senate bill that would make this impossible?

Mr. Sonnenreich. No. Under the existing law originally the Congress was going to write in a specific exemption but it was then decided that it would be handled by regulation and we intend to do it the same way under this law.

Mr. Satterfield. Thank you. I have no other questions.

(Drug Abuse Control Amendments of 1970, Hearings before the Subcommittee on Public Health & Welfare of the Committee on Interstate and Foreign Commerce, House of Representatives, 91st Cong., 2d Sess. 117–18 (1970)).

Defendants contend that the statement to Congress of the representative of the Bureau of Narcotics and Dangerous Drugs, Mr. Sonnenreich, led to an exemption of the use of peyote by the Native American Church only, and not by other religious groups. However, this contention overlooks the reason why Mr. Sonnenreich classified the Native American Church as "sui generis". During the hearings on the 1970 Act Mr. Sonnenreich said, "We consider the Native American Church to be sui generis. . . . [T]hey regard peyote as a deity. . . ." Plainly the Church was sui generis because it was the only religious organization then in existence that regarded peyote as a deity. Mr. Sonnenreich's statement did not foreclose the exemption to other religious organizations later established that also regard peyote as a deity, as the plaintiff, the Native American Church of New York, claims to do.

As first passed by the House, H.R. 2 exempted the use of peyote "in connection with the ceremonies of a *bona fide* religious organization" (emphasis added). Congressman Harris expressed the understanding that H.R. 2 "cannot forbid bona fide religious use of peyote." He had before him a letter sent in response to his request for the position of the Food and Drug Administration in respect to H.R. 2 as passed by the Senate with the peyote exemption deleted from the House version of the bill. The Commissioner of Food and Drugs told Congressman Harris:

> If the church is a bona fide religious organization that makes sacramental use of peyote, then it would be our view that H.R. 2, even without the peyote exemption which appeared in the House-passed version, could not forbid bona fide religious use of peyote. We believe that the constitutional guarantee of religious freedom fully safeguards the rights of the organization and its communicants.

(111 Cong.Rec. 15977 (1965)).

On that basis, Mr. Harris said "Mr. Speaker, in view of the foregoing, I recommend that the House agree to the Senate amendments to H.R. 2." *Id.*

Accordingly, the Court concludes that the exemption for peyote is equally available to the plaintiff, the Native American Church of New York, if in fact it is a bona fide religious organization and would make use of peyote for sacramental purposes and regard the drug as a deity. A trial will be held on that question unless the defendants stipulate that the plaintiff church would so use peyote.

SO ORDERED.