Frances A. WARNER, Plaintiff,

v.

John A. GRAHAM, Duainne S. Bourcy, Wayne J. Anderson and Weldee Baetsch, Defendants.

Civ. No. A1–85–259.

United States District Court, D. North Dakota, Southwestern Division.

May 15, 1987.

Greg Lewis, Moorhead, Minn., David C. Thompson, Fargo, N.D., for plaintiff.

Mary Muehlen Maring, Michael D. Nelson, West Fargo, N.D., for defendants.

## MEMORANDUM AND ORDER

CONMY, Chief Judge.

Frances Warner sues defendants for violation of her first amendment right to free exercise of her religion. 42 U.S.C. § 1983. Defendants have moved this court for summary judgment pursuant to Rule 56, Fed.R. Civ.P.

Summary judgment is appropriate where there are no genuine issues of material fact and it appears that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *Williams v. City of St. Louis,* 783 F.2d 114, 115 (8th Cir.1986). For purposes of a motion for summary

judgment this court must view the facts in the light most favorable to the non-moving party, and must give that party the benefit of all reasonable inferences to be drawn from the facts. *Matsushita Electric Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986); *Kegel v. Runnels*, 793 F.2d 924, 926 (8th Cir.1986). Summary judgment is an extreme remedy, and should not be entered unless the movant establishes its right to judgment with such clarity as to leave no room for controversy; the non-movant must not be entitled to recover under any discernible circumstances. *Foster v. Johns–Manville Sales Corp.*, 787 F.2d 390, 392 (8th Cir.1986).

FACTS

The following facts are not disputed:

*Termination*

In 1981 the Lake Region Human Services Center hired plaintiff as a consultant on an independent contract basis to provide drug and alcohol education to various public schools, non-profit associations, and other groups both on and off the Devils Lake Sioux Indian Reservation.

In 1982, plaintiff became a full-time Program Specialist with the Lake Region Human Services Center. The Position Information Questionnaire for the position indicated that plaintiff's primary function was to provide alcohol and drug education services of a preventive nature to students in grades 5–12 (45% of allocated time). She was also to conduct chemical abuse awareness sessions with adults and community groups, develop a "minor in possession" program, participate in incest groups, and other specialized assignments (25% of time); assist addiction counselors in assigned tasks related to overall case plans for addicted individuals and families (20% of time); and work with community groups and caretakers in doing needs assessments and effectiveness of services data collection (10% of time).

On July 13, 1984, plaintiff was arrested and charged with distribution and possession with intent to distribute peyote, a Schedule I, non-narcotic controlled substance, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. She was acquitted of these charges on October 29, 1984.

On July 16, 1984, plaintiff discussed the situation with defendant Duainne Bourcy, the regional director for the Lake Region Human Services Center. During the meeting, plaintiff admitted that she used peyote, and explained that this use was associated with her religious practices in the Native American Church.

After the meeting, Bourcy telephoned Wayne Anderson, the deputy director of the Department of Human Services, and they decided that the appropriate course of action was to suspend plaintiff for thirty days without pay, pending the outcome of the criminal proceedings. Bourcy and Anderson had previously discussed various options and prior practices within the Department in deciding which course to follow with plaintiff.

Bourcy mailed a letter notifying plaintiff of her suspension on the same date. The letter informed plaintiff that, if the charges were dropped or she were acquitted, she might be reinstated. Lake Region reserved the right to alter her employment status at any time, however.

On August 14, 1984, plaintiff was suspended without pay for an indeterminate period. This suspension was purely procedural: since personnel guidelines only permitted thirty-day suspensions, and it appeared that criminal proceedings would require more time, Bourcy and Anderson placed plaintiff on an indefinite leave of absence.

On September 25, 1984, Bourcy met with Anderson, defendant John Graham, the Executive Director of the Department of Human Services; and Assistant Attorneys General Judith Cummings and Blaine Nordwall. Bourcy then informed the others that plaintiff had admitted to using peyote, and that she intended to continue using peyote. Mr. Bourcy also stated that several school officials and community members had expressed an unwillingness to allow plaintiff into their schools and community groups, even if she were acquitted. Mr. Bourcy did not explain that the plaintiff's

use of peyote was connected with the practice of her religion. Everyone agreed that plaintiff should be terminated.

On September 27, 1984, Bourcy sent plaintiff a letter informing her that she had been terminated because of her admitted use of peyote and the adverse effect this use would have on her working relationships with clients and addiction professionals. Plaintiff filed a grievance.

On October 2, 1984, an internal grievance procedure hearing was held before a hearing officer; the officer recommended upholding plaintiff's termination. The officer considered various testimony, and determined that Bourcy's stated reasons must be accepted as fact, and cannot be said to be without substance or reasoned basis. Because personnel policies and procedures had been followed, the hearing officer found that he was required to recommend that the regional director's actions be upheld. The hearing officer recommended, however, that plaintiff's request to be placed in alternative employment (i.e., sexual abuse counseling) be given serious consideration.

On November 8, 1984, defendant Graham upheld Bourcy's decision to terminate plaintiff, finding that his conclusions regarding plaintiff's future effectiveness was upheld by the record. Graham also stated that his decision was reached after "lengthy consideration of Mrs. Warner's claimed constitutional protection for her continued use of peyote. It is not my intent to deny that claimed right." The reason for her termination was that her use of a "mind-altering substance" was deemed inappropriate for her position, and that her reinstatement would harm the Department's clients and other public agencies served by the Department. Graham recommended, however, that plaintiff be given priority consideration for vacant human service center positions, and directed that the personnel division provide her with weekly job opening announcements.

Plaintiff appealed this decision to the State Personnel Board, and an investigatory hearing was held on December 10, 1984 before hearing officer Darwin Heinitz.

On January 28, 1985 Heinitz gave the State Personnel Board his Findings of Fact, Conclusions of Law and Recommendation. Mr. Heinitz stated in his Recommendation that plaintiff's acquittal had removed "use and possession of a controlled substance" as a ground for dismissal; the only "cause" that remained was plaintiff's effectiveness as an alcohol and drug educator. Since the extent of the effects on plaintiff's job duties, working relationships, etc., was unknown, Mr. Heinitz recommended that plaintiff be reinstated. Based on the Findings, Conclusions and Recommendation, the State Personnel Board found that plaintiff's termination was inappropriate, and ordered that plaintiff be reinstated with full back pay and benefits.

On February 6, 1985, defendants Weldee Baetsch, Director of Personnel of the Department of Human Services, and Bourcy met with plaintiff to discuss implementation of her return. Plaintiff signed in for work later that afternoon. Plaintiff then requested, and received, annual leave until February 11, 1985.

On February 7, 1985, plaintiff contacted Baetsch and informed him that she wanted her reinstatement revoked. Baetsch informed plaintiff that he was not authorized to do that. Baetsch then returned to Devils Lake and met with plaintiff to negotiate the terms of her reinstatement.

The parties met for three days, but no agreement could be reached.

On February 21, 1985, Darwin Heinitz (the hearing officer before the State Personnel Board) met with plaintiff and Bourcy and made recommendations to facilitate plaintiff's return to work. Plaintiff left the meeting after the recommendations had been made, and immediately submitted her written resignation.

On March 26, 1985, defendants accepted plaintiff's resignation.

*Unemployment Benefits*

On July 31, 1984, plaintiff applied for unemployment benefits. On August 14, 1984, she was determined disqualified from benefits from July 29, 1984 through August 18, 1984.

On August 22, 1984, plaintiff appealed the August 14 determination.

On September 17, 1984, an Appeals Referee held a telephonic hearing on plaintiff's appeal. On September 19, 1984, the Appeals Referee held that plaintiff was entitled to unemployment compensation benefits effective July 29, 1984 and thereafter as long as she continued to meet the legal eligibility requirements. The Appeals Referee found that the Department of Human Services had failed to establish that plaintiff's suspension involved misconduct.

On September 28, 1984, the Department of Human Services requested Bureau review of the Appeals Referee's decision. This request was granted on October 15, 1984, and a remanded hearing was held November 20, 1984, at the Devils Lake Job Service office.

On January 2, 1985, the Appeals Referee at the remanded hearing found that the Department had failed to establish that the reasons for plaintiff's suspension involved misconduct, and that plaintiff was therefore entitled to benefits effective July 29, 1984 through September 22, 1984. The Appeals Referee found, however, that the reasons for plaintiff's discharge did constitute misconduct,[1] and that she was therefore disqualified from benefits effective September 23, 1984.

On January 15, 1985, plaintiff petitioned for judicial review of the January 2 decision. On April 22, 1985, the state district court dismissed plaintiff's petition for improper venue.

On May 1, 1985, the Executive Director of Job Service North Dakota issued a Redetermination finding that since plaintiff had been reinstated with full back pay and benefits she had not been discharged.

Following plaintiff's resignation on February 21, 1985, she again applied for unemployment benefits. On March 15, 1985, a claims deputy issued a termination which disqualified plaintiff from benefits.

On April 18, 1985, an Appeals Referee affirmed that determination; on October 16, 1985, the Executive Director of Job Service affirmed the Appeals Referee's decision, finding that plaintiff had left her job without good cause attributed to her employer.

Plaintiff did not appeal or seek review of the October 16 decision.

On September 23, 1985, plaintiff brought this action.

## LAW

### *Preclusive Effect of Previous Administrative Proceedings*

Defendants argue that plaintiff is precluded from relitigating issues determined in the various state administrative proceedings.

In *University of Tennessee v. Elliott*, —— U.S. ——, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986), the United States Supreme Court held that when a state agency acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the state's courts. *Id.* 106 S.Ct. at 3227 (quoting *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966)).

The Eighth Circuit has applied this standard on three occasions. *Yancy v. McDevitt*, 802 F.2d 1025 (8th Cir.1986); *Richardson v. Phillips Petrol. Co.*, 799 F.2d 426 (8th Cir.1986); and *Deretich v. Office of Admin. Hearings, State of Minn.*, 798 F.2d 1147 (8th Cir.1986). In each case, the court stated the standard, and then looked

---

1. The Appeals Referee found:

The employer has established that the claimant's credibility and effectiveness as an addiction counsel and educator is damaged as a result of her admitted use of peyote. The claimant admits that she uses and possesses peyote and will continue to use and possess the substance.

....

The claimant's credibility and integrity is of great importance to her employment as a drug counselor and educator. Her conduct has adversely affected both her credibility and integrity and is detrimental to her employer's interest.

Decision on Review 3–4 (Defendant's Appendix at 35, 37–38).

to the applicable state law to determine whether the state courts would have given the agency's factual findings preclusive effect. This court must therefore look to North Dakota law and determine whether the courts of that state would give preclusive effect to the factual findings of its administrative agencies.

In *Amerada Hess Corp. v. Furlong Oil & Mins. Co.*, 348 N.W.2d 913 (N.D.1984), the North Dakota Supreme Court found that the Order of the Industrial Commission was res judicata, and that the plaintiff's suit for an injunction was an improper collateral attack on the order. *Id.* at 916.

In 1982 defendant Furlong Oil & Mins. Co. applied to the North Dakota Industrial Commission for authority to enter a well bore drilled and completed by plaintiff Amerada in 1956. Amerada shut in the well in 1969, and relinquished its oil and gas lease in 1974. Following a hearing, at which Amerada was present and participated, the Industrial Commission issued an Order granting Furlong permission to enter the well. The Industrial Commission found that Amerada had deserted the well, and that it would be more economical to produce other wells through the existing well than to drill a second well. Amerada did not appeal the determination.

Amerada then sought and obtained a temporary restraining order from the state district court. Furlong filed an ex parte application for dissolution of the order, and both parties appeared at a hearing on the application. The district court ultimately dissolved the restraining order, finding that Amerada had abandoned the well.

The supreme court found that the district court would have been justified in dismissing the action for injunctive relief as an improper collateral attack on the Industrial Commission's Order. *Id.* at 916. Amerada had had a full and fair opportunity to litigate the issue before the Commission. The findings of the Commission reflected its expertise in the area. Amerada had the opportunity to seek judicial review of the Commission's order, and chose not to. No fraud or bad faith were alleged, and there appeared to be no jurisdictional defects. Accordingly,

> [T]he situation presented here is precisely the type in which the doctrine of res judicata is most necessary to prevent collateral attacks on administrative agency decisions in order to protect successful parties from unnecessary, duplicitous proceedings and to prevent the drain on the resources of the parties and the judiciary which is evident here.

*Id.* at 917.

■ The Job Service of North Dakota and the State Personnel Board are "administrative agencies" within the meaning of the North Dakota Century Code. *Lord v. Job Service N.D.*, 343 N.W.2d 92, 94 (N.D. 1984); *Hammond v. N.D. Personnel Bd.*, 332 N.W.2d 244, 246 (N.D.1983). Accordingly, in North Dakota, their decisions will be given preclusive effect in a subsequent state action where the parties had a full and fair opportunity to litigate and an opportunity to seek judicial review in a state court, where there is no fraud or bad faith alleged, and where there are no jurisdictional defects. *Amerada Hess*, 348 N.W.2d at 916–17.

None of the parties has alleged fraud or bad faith in the proceedings before the various agencies in this case. Nor do there appear to be any jurisdictional defects. The parties all had full and fair opportunities to litigate the facts surrounding plaintiff's dismissal, and this court therefore finds that certain fact findings are entitled to res judicata effect.

Plaintiff has provided this court with a copy of the transcript of the hearing before the State Personnel Board; both parties have provided a copy of the hearing officer's Findings of Fact & Conclusions of Law. This court finds that these Findings of Fact are entitled to preclusive effect for the reasons stated above.

Also, the April 18, 1985 Appeals Referee Decision, and the October 16, 1985 Executive Director's Decision are entitled to preclusive effect.

■ On the other hand, the findings of Robert Brady, the hearing officer at the

October 2, 1984 hearing, are not entitled to preclusive effect. Mr. Brady admitted that he was required to accept the statements of Mr. Bourcy as fact. *See* Appendix to Brief in Support of Defendants' Motion for Summary Judgment 4. Since there was apparently no weighing of testimony, or "fact-*finding*," his findings are not entitled to preclusive effect.

Similarly, since defendant Graham's determination was based solely upon the findings of Mr. Brady, his determination is not entitled to preclusive effect.

The remainder of the decisions issued by the various administrative agencies are either surplusage, or do not contain factual findings relevant to the issues now before the court.

This court is not bound, however, by the agencies' legal analysis or conclusions, and must therefore give de novo consideration to plaintiff's free exercise claims.

*Free Exercise*

The first amendment to the United States Constitution preserves to the individual the right to free exercise of religion. The right of belief is absolute, but the right of conduct based upon those beliefs is not, and can be regulated by the state. *Sherbert v. Verner*, 374 U.S. 398, 402–03, 83 S.Ct. 1790, 1793, 10 L.Ed.2d 965 (1963).

In considering a free exercise claim, the court must apply a traditional balancing test. First, the plaintiff must establish that the defendants have burdened a sincerely held religious belief. The burden then shifts to defendants to show that they have a compelling state interest that outweighs plaintiff's interest in free exercise. *Id.* Finally, defendants must show that the means by which the compelling state interest is achieved is the least restrictive means of achieving the compelling state interest. *Thomas v. Review Board of the Indiana Employment Security Div'n*, 450 U.S. 707, 718, 101 S.Ct. 1425, 1432, 67 L.Ed.2d 624 (1981).

*First Prong—Burden on Religious Beliefs*

Only beliefs rooted in religion are entitled to first amendment protection. What constitutes a "religious belief" is often a difficult issue, and does not turn upon judicial perceptions of the particular belief or practice in question. "[R]eligious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection." *Thomas v. Review Bd. of Indiana Empt. Sec.*, 450 U.S. 707, 714, 101 S.Ct. 1425, 1430, 67 L.Ed.2d 624 (1981).

Nor does the Constitution distinguish between persons born to a faith and those recently converted. As the Supreme Court recently stated in *Hobbie v. Unemployment Appeals Comm'n of Fla.*, — U.S. ——, 107 S.Ct. 1046, 94 L.Ed.2d 190 (1987):

> The First Amendment protects the free exercise rights of employees who adopt religious beliefs or convert from one faith to another after they are hired. The timing of [one's] conversion is immaterial to our determination that her free exercise rights have been burdened; the salient inquiry under the Free Exercise Clause is the burden involved.

*Id.* 107 S.Ct. at 1051.

No one questions the sincerity of the plaintiff's religious beliefs, or disputes that her ingestion of peyote is inextricably linked with her exercise of those beliefs.

Defendants also concede, for purposes of argument, that the acts of suspending and terminating plaintiff's employment burdened her free exercise. This concession is in accord with well-established Supreme Court precedent. *See, e.g., Thomas v. Review Board of Indiana Empt. Sec.*, 450 U.S. 707, 717–18, 101 S.Ct. 1425, 1432, 67 L.Ed.2d 624 (1981) (where state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs, a burden upon religion exists); *and Sherbert v. Verner*, 374 U.S. 398, 403–04, 83 S.Ct. 1790, 1793–94, 10 L.Ed.2d 965 (1963) (where denial of unemployment benefits forces individual to choose between following precepts of religion or forfeiting benefits, or abandoning

precept in order to accept work, a clear burden upon free exercise rights exists). *And see Hobbie,* 107 S.Ct. at 1048–52 (affirming decisions in *Thomas* and *Sherbert* that State may not force an employee to choose between following the precepts of religion and forcing benefits, and abandoning precept in order to accept work).

*Second Prong—Least Restrictive Means of Achieving Compelling State Interest*

The burden now shifts to defendants to show that they have a compelling state interest. Only those interests of the highest order and those not otherwise served can overbalance legitimate claims to the free exercise of religion. *Wisconsin v. Yoder,* 406 U.S. 205, 215, 92 S.Ct. 1526, 1533, 32 L.Ed.2d 15 (1972).

Defendants argue that they have a compelling interest in the health, safety and welfare of the citizens of North Dakota, and accordingly in curbing the use of controlled substances by citizens. The state promotes this interest by providing preventive alcohol and drug education services through the Department of Human Services.

This court has previously recognized the compelling nature of the government's interest in controlling illegal drug usage. *United States v. Warner,* 595 F.Supp. 595, 598–99 (D.N.D.1984). This court must now balance the respective burdens.

*Least Restrictive Means*

*Sherbert* and the cases following it require a comparison of two burdens: the burden on the person seeking the benefit of being denied the benefit as the price for observing his/her religion, and the burden on the government of extending the benefit to that person. *Menora v. Illinois High School Ass'n,* 683 F.2d 1030, 1033 (7th Cir. 1982). "Free exercise of religion does not

mean costless exercise of religion, but the state may not make the exercise of religion unreasonably costly." *Id.*

On July 16, 1984, the State suspended plaintiff without pay pending the outcome of the criminal prosecution. On August 14, 1984, the State, finding that the period of suspension (30 days) would expire prior to resolution of the criminal charges, placed plaintiff on an indeterminate leave of absence.

The defendants were justifiably concerned with the continuing viability of the drug and alcohol education program.[2] The acts of suspension during the pendency of criminal proceedings were reasonable under the circumstances, and constituted the least restrictive means of furthering this interest.

On September 27, 1984, the State terminated plaintiff because of her admitted use of peyote and the adverse effect this would have on her working relationships with staff members and clients.

■ This termination was not the least restrictive means that defendants could have employed, as is illustrated by her subsequent reinstatement to other duties, and therefore violated plaintiff's first amendment free exercise rights. *See Hobbie, supra; Thomas, supra; and Sherbert, supra.*

Plaintiff was reinstated by the State on February 6, 1986, after determinations by the State Personnel Board. She received full back pay and benefits. At that point, the initial constitutional violation ended, having satisfied the least restrictive prong.

■ On February 11, 1985, plaintiff resigned when defendant refused to reinstate her to her former duties. Plaintiff apparently argues that this refusal constituted a

---

**2.** Bourcy testified at the State Personnel Board hearing that following plaintiff's arrest for possession and distribution of illegal substances, various groups expressed their unwillingness to work with plaintiff, including the Human Services Planning Council, and the Minnewauken, Maddock, Devils Lake, Starkweather, Ramsey County, and Towner County Public Schools. Mr. Bourcy also testified that the various staff members at Lake Region did not want plaintiff

reinstated. *See* Transcript of Investigatory Hearing 152–169 (Plaintiff's Exhibit A).

Participation in the Department of Human Services' drug and alcohol education services is entirely voluntary. The clear implication of Bourcy's testimony was that if plaintiff were reinstated to her previous position the schools would withdraw their participation from the program.

de facto termination prohibited by *Thomas* and *Sherbert.* This court finds, however, that the defendant's refusal was appropriate in light of its compelling interest in the continuing viability of its drug and alcohol education program. This reinstatement to other duties was the least restrictive means that the State could employ that would preserve plaintiff's religious freedom while protecting its interest. The State did not violate plaintiff's free exercise rights by refusing to reinstate her to her former duties.

Finally, the State argues that its suspension and termination of plaintiff was not motivated by a disapproval of her religious practices, but resulted from her loss of credibility through public knowledge and condemnation of her ingestion of peyote, and her stated intention to continue partaking of this sacrament.

This court has no reason to doubt the State's motivations. Unfortunately, however, subjective motivation is not a consideration in free exercise analysis. If this court finds that the State has burdened plaintiff's free exercise of religion, and that the State's interest does not outweigh the plaintiff's free exercise interest, or the State's means of furthering its interest is not the least restrictive means, then this court must find that the State has violated plaintiff's free exercise rights guaranteed under the first amendment.

For example, in both *Sherbert* and *Thomas* the person's employment was terminated because of the person's unwillingness to work on a particular day (Sherbert, a Seventh Day Adventist, refused to work on Saturday), or to work in a particular area (Thomas, a Jehovah's Witness, refused to work in the armaments section of a foundry). In each case, the employer was not concerned with the employee's religious beliefs or affiliation. The employer's concern was purely economic: someone has to work on this day/in this area, or ·I will lose money.

In neither *Sherbert* nor *Thomas* did the employer's subjective motivations enter into the Court's free exercise analysis. It is irrelevant to this court's analysis now.

## QUALIFIED IMMUNITY

Defendants argue that they are entitled to qualified immunity from damages because the law regarding Indian religious rights was not clearly established at the time of plaintiff's suspension and termination, and because their acts were the least restrictive means of furthering their interest.

Plaintiff argues that the defendants either knew, or should have known, that suspending and/or terminating plaintiff would violate her free exercise rights, and that they should be held to a higher standard as lawyers, or ranking state officials that had access to legal assistance.

In *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Supreme Court set out a wholly objective standard for determining entitlement to qualified immunity. Under *Harlow,* government officials performing discretionary functions were shielded from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." 457 U.S. at 818, 102 S.Ct. at 2738. Entitlement to qualified immunity depended on the "objective reasonableness of an official's conduct, as measured by reference to clearly established law." *Id.* The Court found that the district court should determine whether the law was clearly established at the time an action occurred. "If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Id.* The Court concluded that the public's interest in deterring unlawful conduct and in compensating victims was protected by a test that focused on objective reasonableness:

> Where an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate; and a person who suffers injury caused by such conduct may have a cause of action. But

where an official's duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken "with independence and without fear of consequences."

*Id.* at 819, 102 S.Ct. at 2739.

Only the objective reasonableness of the official's conduct may be considered; other circumstances are not relevant to the issue of qualified immunity, including whether the official had violated some other statute or regulation. *Davis v. Scherer,* 468 U.S. 183, 190, 104 S.Ct. 3012, 3017, 82 L.Ed.2d 139 (1984) (officials sued for violations of rights conferred by statute or regulation, like officials sued for violation of constitutional rights, do not forfeit immunity by violating some other statute or regulation). The *Harlow* objective reasonable test amply protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).

The issue before this court is whether free exercise law with regard to the Native American Church was clearly established at the time of plaintiff's termination.

In *People v. Woody,* 61 Cal.2d 716, 40 Cal.Rptr. 69, 394 P.2d 813 (1964), the Supreme Court of California recognized the Native American Church as an Indian religious organization, and further recognized the sacred nature of peyote to members of the Native American Church:

> Although peyote serves as a sacramental symbol similar to bread and wine in certain Christian churches, it is more than a sacrament. Peyote constitutes in itself an object of worship; prayers are directed to it much as prayers are devoted to the Holy Ghost. On the other hand, to use peyote for nonreligious purposes is sacrilegious. Members of the church regard peyote also as a "teacher"

because it induces a feeling of brotherhood with other members; indeed, it enables the participant to experience the Deity. Finally, devotees treat peyote as a "protector." Much as a Catholic carries his medallion, an Indian G.I. often wears around his neck a beautifully beaded pouch containing one large peyote button.

40 Cal.Rptr. at 73–74, 394 P.2d at 817–18. The court found that enforcing the statutory prohibition of the use of peyote resulted in the virtual inhibition of religion. "To forbid the use of peyote is to remove the theological heart of Peyotism." *Id.* at 74, 394 P.2d at 818.

At the time of plaintiff's dismissal, at least four other state courts had recognized the sacramental use of peyote as a protected religious practice under the free exercise clause. *See Native American Church of New York v. United States,* 468 F.Supp. 1247 (S.D.N.Y.1979), *aff'd,* 633 F.2d 205 (2d Cir.1980); *Peyote Way Church of God v. Smith,* 742 F.2d 193 (5th Cir.1984); *Whitehorn v. State,* 561 P.2d 539, 544 (Okla.Crim.App.1977); and *State v. Whittingham,* 19 Ariz.App. 27, 504 P.2d 950 (1973). Ten states had statutorily exempted the sacramental use of peyote from their Controlled Substances Acts, including Arizona, Colorado, Iowa, Kansas, Minnesota, Nevada, New Mexico, South Dakota, Wisconsin and Wyoming.[3]

Defendants should have suspected that the sacramental use of peyote was entitled to some constitutional protection.

Defendants argue, however, that at the time of plaintiff's termination it was unclear whether plaintiff could be a bona fide member of the Native American Church, and therefore entitled to that exemption from criminal prosecution. Defendants seem to assume that if plaintiff was not entitled to the exemption, she would not

---

**3.** *See* Ariz.Rev.Stat.Ann. § 13–3402 (Supp.1986) (source: Laws 1923, Ch. 48, §§ 1, 2, 1973, 1978, 1979); Colo.Rev.Stat. § 12–22–317(3) (1985) (repealed and reenacted in 1981); Iowa Code Ann. § 204.204(8) (1987) (also Iowa Code § 204.204(5) (1979)); Kan.Stat.Ann. § 65–4116(c)(8) (1985); Minn.Stat.Ann. § 152.02(4) (Supp.1987) (1979 Amendment substituted American Indian Church for Native American Church); Nev.Rev.Stat.Ann. § 453.541 (Michie 1985) (adopted in 1981); N.M. Stat.Ann. § 30–31–6(D) (Supp.1980), S.D. Codified Laws Ann. § 34–20B–14(17) (1986) (adopted in 1970); Wis.Stat.Ann. § 161.115 (West.1974) (adopted in 1971); and Wyo.Stat. § 35–7–1044 (1977) (adopted in 1971).

have a protected free exercise interest in the sacramental use of peyote.

▉ Defendant's argument is fallacious. Plaintiff's membership in the Native American Church is not determinative of her free exercise rights, but merely bears on the issue of the sincerity of her beliefs. As the district court pointed out in *Native American Church of New York v. United States,* 468 F.Supp. at 1251, the peyote exemption is not limited to members of the Native American Church. The legislative history of the exemption indicated that only the Native American Church was exempted at that time because it was the only existing religious organization that regarded peyote as a deity:

> As first passed by the House, H.R. 2 exempted the use of peyote "in connection with the ceremonies of a *bona fide* religious organization" (emphasis added). Congressman Harris expressed the understanding that H.R. 2 "cannot forbid bona fide religious use of peyote." He had before him a letter sent in response to his request for the position of the Food and Drug Administration in respect to H.R. 2 as passed by the Senate with the peyote exemption deleted from the House version of the bill. The Commissioner of Food and Drugs told Congressman Harris:
>
> > If the church is a bona fide religious organization that makes sacramental use of peyote, then it would be our view that H.R. 2, even without the peyote exemption which appears in the House-passed version, could not forbid bona fide religious use of peyote. We believe that the constitutional guarantee of religious freedom fully safeguards the rights of the organization and its communicants.
>
> (111 Cong.Rec. 15977 (1965)).

468 F.Supp. at 1251. The district court concluded that the exemption for peyote is equally available to all bona fide organizations that make use of peyote for sacramental purposes and regard the drug as a deity. *Id.*

▉ Nor is membership in an organization a requisite to constitutional protection. Religious beliefs that are not shared by other members of a religious organization are equally entitled to first amendment protection. As the Supreme Court stated in *Thomas,*

> Intrafaith differences ... are not uncommon among followers of a particular creed, and the judicial process is singularly ill equipped to resolve such differences in relation to the Religion Clauses. One can, of course, imagine an asserted claim so bizarre, so clearly nonreligious in motivation, as not to be entitled to protection under the Free Exercise Clause.... [T]he guarantee of free exercise is not limited to beliefs which are shared by all of the members of a religious sect. Particularly in this sensitive area, it is not within the judicial function and judicial competence to inquire whether the petitioner or his fellow ... more correctly perceived the commands of their common faith. Courts are not arbiters of scriptural interpretation.

450 U.S. at 715–16, 101 S.Ct. at 1430–31. *Also see Quaring v. Peterson,* 728 F.2d 1121 (8th Cir.1984) (Pentocostal who objected to driver's license photograph had protected free exercise interest, even though no other members of her faith believed that photographs were prohibited).

▉ The sincerity of belief is the key inquiry in a first amendment free exercise case. Where no one questions the sincerity of plaintiff's belief or the spiritual nature of her practice of that belief, membership in a religious organization becomes largely irrelevant.

▉ This court finds that the defendants should have known that plaintiff's sacramental ingestion of peyote was entitled to free exercise protection. Therefore, defendants are not entitled to qualified immunity from civil liability for terminating her employment, to the extent that they knew of plaintiff's religious claim.

## DECLARATORY JUDGMENT

Plaintiff asks that this court declare the legal relationships between the parties pursuant to 28 U.S.C. § 2201(a). Defendants

argue that plaintiff is not entitled to declaratory judgment because there is no case or controversy before the court as required by that statute, since plaintiff will not accept alternate employment with the State.

Section 2201, Title 28, United States Code, provides:

In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C.S. § 2201(a) (Supp.1986).

The purpose of a declaratory judgment is to provide prospective relief. *White v. Califano,* 437 F.Supp. 543, 560 (D.S.D.1977), *aff'd,* 581 F.2d 697 (8th Cir.1978). Declaratory relief is appropriate only

(1) where the judgment will serve a useful purpose in clarifying and settling the legal relations in issue; or (2) when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceedings.

*Id.* (quoting *Maryland Casualty Company v. Rosen,* 445 F.2d 1012, 1014 (2d Cir.1971)).

A federal court has no jurisdiction to enter a declaratory judgment unless there exists an actual case or controversy between adverse parties in an adversary proceeding. *Vorbeck v. Schnicker,* 660 F.2d 1260, 1265 (8th Cir.1981).

"Basically, the question in each case is whether the facts alleged, under all the circumstances show there is a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."

*Id.* (quoting *Golden v. Zwickler,* 394 U.S. 103, 108, 89 S.Ct. 956, 959, 22 L.Ed.2d 113 (1969). A specific injury must be impending, and differences must be "ripe for determination:"

The disagreement must not be nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them.

*Id.* at 1266 (quoting *Public Service Commission v. Wycoff Co.,* 344 U.S. 237, 243–44, 73 S.Ct. 236, 240, 97 L.Ed. 291 (1952)).

This court finds that an actual case and controversy exists, and that declaratory judgment is appropriate.

Based on the foregoing, it is the ORDER of this court

1. THAT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF DISMISSAL IS DENIED.

2. THAT PLAINTIFF'S REQUEST FOR DECLARATORY JUDGMENT IS GRANTED. THIS COURT FINDS THAT THE DEFENDANTS HAVE VIOLATED PLAINTIFF'S FIRST AMENDMENT FREE EXERCISE RIGHTS BY REQUIRING THAT SHE CHOOSE BETWEEN EXERCISING HER RELIGIOUS BELIEFS AND LOSING HER JOB, OR ABANDONING THE EXERCISE OF HER RELIGION AND KEEPING HER JOB. THIS COURT FINDS THAT PLAINTIFF'S FREE EXERCISE RIGHTS WERE WELL–ESTABLISHED AT THE TIME OF HER TERMINATION, AND THAT DEFENDANTS ARE THEREFORE NOT ENTITLED TO QUALIFIED IMMUNITY, TO THE EXTENT THAT THEY KNEW OF PLAINTIFF'S RELIGIOUS CLAIMS. THIS COURT FURTHER FINDS THAT DEFENDANTS' REINSTATEMENT OF PLAINTIFF ENDED THE CONSTITUTIONAL VIOLATION, AND THAT DEFENDANTS ARE THEREFORE ONLY SUBJECT TO DAMAGES FOR THE PERIOD FROM PLAINTIFF'S TERMINATION UNTIL HER REINSTATEMENT. THE COURT NOTES THAT PLAINTIFF HAS BEEN PAID BACK SALARY FOR SUCH PERIOD. THE ISSUE OF REMAINING DAMAGES, IF ANY, IS RESERVED FOR FUTURE DETERMINATIONS.